[No. 2091, January 28, 1918.]

# BUNTON v. CAMPREDON.

## SYLLABUS BY THE COURT.

1. Findings of fact by the court, sitting as a jury, will not be disturbed, if supported by substantial evidence.

P. 320

2. A promise to pay for services rendered to a third person at the promisor's request is an original undertaking, not within the statute of frauds.        P. 321

·3. It is not the broker who first speaks of property, but the broker who is the procuring cause of the sale, be he the first or the second who engaged the attention of the purchaser, who is entitled to the commission.        P. 321

4. Whether a promise is a direct or collateral undertaking does not depend solely upon the words used in making the promise or upon the form of expression, but upon the words, the situation of the parties, and the circumstances of the transaction, the question being whether the parties understood the language as being a collateral or a direct promise.        P. 322

Appeal from District Court, Socorro, County; Mechem, Judge.

Suit by W. B. Bunton against Julius Campredon. Judgment for plaintiff, and defendant appeals. Affirmed.

M. C. Spicer, of Socorro, for Appellant.

Findings of Fact made by the trial court, if not supported by substantial evidence, should be set aside on appeal.  Wilkerson v. Badaracco 21 N. M. 517; Moriarity v. Meyer 21 N. M. 521; Nickle v. Coulter (N. M.) 159 Pac. 673; Hodges v. Hodges (N. M.) 159 Pac. 1007.

The English statute of frauds (29 Chas. II, sec. 4) forms a part of the common law of this state.  Childres v. Talbott 4 N. M. 336; Childres v. Lee 5 N. M. 576.

It is now well settled, both in this country and in England, that an oral promise to answer for the debt of another is within the statute, although when made the debt to which it is collateral may not have been incurred.

20 Cyc. p. 162. Cole v. Hutchinson 26 N. W. 319 (Minn.); Coal etc Co. v. Randal 80 S. E. 285, (Ga.); Hepner v. Wheatley 148 N. W. 594 (S. D.); Hein v. Finnigan 163 S. W. 124 (Tex.); Land etc. Co. v. Bank 164 S. W. 1066 (Tex.); Cochran v. Canty 158 N. W. 559 (Ia.).

Whether the promise made by appellant to appellee is an original or a collateral is a matter of fact to be found by a court or jury.

20 Cyc. 321. Pocket v. Almon 96 Atl. 421 (Vt.); Hepner v. Wheatley 159 N. W. 135 (S. D.); Davis v. Blum 88 S. E. 465 (S. C.); Waldock v. Bank 143 Pac. 53 (Okla.); Chesebrough v. Terrill 41 Atl. 215 (N. J.); Ford v. McLain 91 N. W. 617 (Mich.); Calahan v. Ward 26 Pac. 53 (Kan.); Lush v. Throop 59 N. E. 529 (Ill.); Worthen v. Sinclair 25 S. E. 414 (Ga.); Harris v. Frank 22 Pac. 856 (Cal.).

Oral agreement to protect plaintiff's commission if he sold the ranch is within the prohibition of the statute of frauds, and is void.

Roberts on Frauds, 207; 20 Cyc. 160.

The court having found that such promise is a collateral undertaking and the same being supported by substantial evidence, such finding is not subject to be reviewed by this court.

Nickle v. Coulter, 158 Pac. 673 (N. M.); Hodges v. Hodges 159 Pac. 1007 (N. M.); Bradstreet v. Gill 160 Pac. 354 (N. M.); People v. Oraker 161 Pac. 1110 (N. M.).

. Plaintiff having failed to establish on the trial of this cause that appellant was personally interested in a

sale of the McBride ranch property or that the main object and purpose in agreeing to pay plaintiff a commission was to subserve some pecuniary or business purpose of appellant involving either a benefit to himself or a damage to plaintiff, did not show such a consideration as would take the promise out of the prohibition of the statute of frauds.

Rice v. Hardwick 17 N. M. 73, citing: Stern v. U. S. 94 U. S. 83; Davis v. Patrick 141 U. S. 488.

The law is well settled that before a broker is entitled to a commission from his principal for the sale of real estate, he must either procure a customer with whom his principal makes a valid contract of sale, or procures one who is ready, willing and able to purchase the property upon the terms and conditions acceptable to his principal.

Keinath & Co. v. Reed 18 N. M. 367; Arnolds v. Wells 21 N. M. 447; 155 Pac. 724; 19 Cyc. 246.

NICHOLAS & NICHOLAS, of Socorro, for appellee.

Findings of fact by the court sitting as a jury will not be disturbed if supported by substantial evidence.

Richardson v. Pierce, 14 N. M. 334; Eagle Mining Company v. Hamilton, 14 N. M. 271; Hancock v. Beasley, 14 N. M. 239; Candelaria v. Miera, 13 N. M. 360; Ortiz v. Bank, 12 N. M. 519; Carpenter v. Lindauer, 12 N. M. 388; Rush v. Fletcher, 11 N. M. 553.

When there is substantial dispute upon the evidence, the findings of fact by the trial court will not be disturbed on appeal.

Zack Metal Co. v. Torpedo Copper Co., 17 N. M. 137; Anderson v. Reed, 20 N. M. 202.

When the direct and leading object of the promisor is to further or promote some purpose or interest of his own, although the incidental effect thereof may be the

payment of the debt of another, is an original promise and is not within the statute.

20th Cyc. Page 163, and cases cited. Hardwick v. Harris 17 N. M. 73.

Brief of appellant on motion for rehearing.

The question of whether the promise is an oral or collateral undertaking is a matter of fact to be found by a jury or by the court, sitting as a jury.

Davis v. Blum 88 S. E. 465 (S. C.) ; Packet v. Almon 96 Atl. 421 (Vt.) ; Hepner v. Wheatley 159 N. W. 135 (S. D.) ; Wachal v. Davis 145 N. W. 865 (Ia.) ; Waldock v. Bank 143 Pac. 53 (Okla.) ; Harris v. Frank 22 Pac. 866 (Cal.) ; Calahan v. Ward 26 Pac. 53 (Kan.) ; 20 Cyc. p. 321, Note 4. 29 Am. & Eng: Encyc. of Law (2nd Ed. 906) note 6.

## OPINION OF THE COURT.

ROBERTS, J. Appellee sued appellant for $90, alleged to be due as a commission for effecting the sale of certain real estate. He recovered judgment for this amount, to review which appellant prosecutes this appeal.

M. F. McBride had a possessory claim to certain unsurveyed government land upon which land he had erected fences, houses, and other improvements. He was indebted to the Chambon estate, of which appellant was general manager, and appellant had become McBride's surety upon certain notes executed by McBride. He had also loaned McBride certain other moneys. To secure the indebtedness owing the Chambon estate and his liability to appellant, he executed to appellant a quitclaim deed to his possessory claim and improvements, and took back from appellant a written agreement that he should have the right to redeem the land at any time within one year from the date of the deed. In other words, the deed was to have the effect of a mortgage. The deed was made some time in June,

1915.  In September appellee entered into a written
contract with McBride, by which he undertook to find
a purchaser for the possessory claim and improvements
as a real estate broker.  Later, in going through the
records in the county clerk's office, appellee discovered
the quit-claim deed made to appellant by McBride.  At
this time appellee met Berry Cox, learned that he de-
sired to purchase a cattle ranch, and found that it
would probably suit him.  The McBride ranch was lo-
cated some distance from Socorro, and it was necessary
to hire an automobile in order to take Cox out to the
ranch.  Appellee knew nothing of the agreement between
appellant and McBride to the effect that the deed was to
be a mortgage.  He called on appellant and told him that
he had made an agreement with McBride, and that he
had a prospective purchaser for the ranch; but, in view
of appellant's quitclaim deed to the property, he would
not take the prospective purchaser out to the ranch, and
trust to McBride's paying his commission.  Thereupon
appellant told appellee to go ahead and consummate
the sale if possible, saying, "And if you make the sale
I will pay the commission."  Thereupon appellee hired
an automobile and took Cox to see the ranch.  Cox was
well satisfied with it, and offered McBride $1,800 for
the place.  McBride refused to sell at that price.  Ap-
pellee and Cox, on the return trip to Socorro, stopped
at Jim Taylor's house.  Taylor was a neighbor to Mc-
Bride, and had told Cox some time before that the
McBride place was for sale.  The parties told Taylor
of their negotiations with McBride, and Taylor stated
that if they wanted to buy the McBride place they
should have come to him; that he could get him to sell
it.  Taylor accompanied appellee and Cox to Socorro,
and Cox gave Taylor a blank check with his name signed
to it, and authorized him to fill in the check for $200 in
case he was able to effect the purchase of the McBride
holdings.  The parties called on appellant and told him
about the negotiations, and appellant and Taylor ar-
ranged to go out to the McBride ranch.  Cox left

Socorro; Taylor and appellant went to the McBride place, and failed to see McBride, who was absent. Appellant authorized Taylor to say to McBride that appellant was willing to pay him $1,500 for the ranch, and told Taylor that if he could buy the ranch for this sum he would divide the profits with him, on the sale to Cox. Appellant returned to Socorro and Taylor, within the next day or two, saw McBride, and told him of appellant's offer, and advised him to let appellant have the place, telling him that if he did not do so a judgment obtained, or about to be obtained, by a man named Montoya would exhaust his equity in the place, and also telling him of certain trouble which he might have with the federal authorities relative to some scrip. McBride agreed to accept the offer and accompanied Taylor to Socorro, where the parties visited appellant, and appellant's offer was accepted by McBride, and an oral agreement was made by which McBride surrendered his equity in the property. Appellant paid McBride $50 in cash, canceled his indebtedness, and a month or two later paid him the balance in cash. On the same day, or shortly thereafter, Taylor delivered to appellant Cox's check for $200, and later, when Cox returned to Socorro, he paid appellant the balance of the purchase price of $1,600, and took a deed from appellant to the property in the name of his wife.

The trial court found that appellee had effected the sale of the property to Cox, and that he was entitled to recover a commission on such sale from appellant, and that $90 was a reasonable commission.

Appellant's first contention is that findings of fact numbered 6, 7, and 9, adopted by the court, are not supported by substantial evidence.

As to the sixth finding, it is contended that there is no evidence to support that part thereof which found that Jim Taylor was acting as the agent of appellant in attempting to make a sale of the McBride ranch, and that McBride agreed to sell the property for the sum of $1,500, understanding at the time he did so that Cox

was purchasing it. Appellant's 'own testimony, however, shows clearly that Taylor was acting for him and under his directions in the negotiations with McBride.

As to the second contention, McBride testified positively that he understood the ranch was being sold to Cox by appellant, for him.

The seventh finding was that, in pursuance of negotiations theretofore had, a deed was executed by appellant to one Texanna Cox, the wife of said Berry Cox, for a consideration of $1,800, which was paid either by said Texanna Cox or her husband to appellant. This finding is clearly supported by the evidence. In fact there is no evidence to the contrary.

[1] By the ninth finding of fact the court found that 5 per cent. of the amount realized on the sale was a reasonable amount for the services rendered by appellee. This finding is supported by the direct and uncontradicted evidence of appellee. Findings of fact by the court, sitting as a jury, will not be disturbed, if supported by substantial evidence. Richardson v. Pierce, 14 N. M. 334, 93 Pac. 715; Eagle Mining Co. v. Hamilton, 14 N. M. 271, 91 Pac. 718; Hancock v. Beasley, 14 N. M. 239, 91 Pac. 735; Candelaria v. Miera, 13 N. M. 360, 84 Pac. 1020; Ortiz v. Bank, 12 N. M. 519, 78 Pac. 529; Carpenter v. Lindauer, 12 N. M. 388, 78 Pac. 57; Rush v. Fletcher, 11 N. M. 555, 70 Pac. 559.

It is next contended that the court erred in refusing to adopt appellant's requested findings of fact numbered 4 and 5. Requested finding numbered 4 was to the effect that James Taylor had been negotiating with Berry Cox prior to October 10, 1915, for the sale of the McBride ranch to the said Cox, and succeeded in getting appellant to purchase the McBride ranch, which purchase was made by appellant on or about October 14 or 15, 1915, at the agreed price of $1,500; and the fifth finding of fact was to the effect that Taylor thereafter negotiated the sale of said ranch from appellant to Berry Cox for the price of $1,800. As to the fourth requested finding, it is sufficient to say that appellant

himself testified that Taylor was acting for him in making the deal with McBride, and the court did not err in refusing to find to the contrary. The fifth finding of fact requested by appellant was properly refused by the court. The evidence of Cox is to the effect that the blank check was given to Taylor as a first payment on the ranch on the day after Cox and Bunton went out to the ranch, on or about October 11, 1915, three or four days prior to the sale which appellant claims was made to him by McBride. Appellant's testimony shows that he knew Taylor had this check in his possession before he "purchased" the ranch from McBride.

[2] It is next contended that the oral agreement between appellee and appellant, whereby appellant agreed to pay appellee's commission if he sold the McBride property to Berry Cox, is within the prohibition of the statute of frauds and void. The agreement, however, was not an undertaking to answer for the debt, default, or miscarriage of McBride. It was a direct undertaking on the part of appellant to pay the commission. A promise to pay for services rendered to a third person at the promisor's request is an original undertaking, not within the statute of frauds. Sinclair v. Bradley, 52 Mo. 180; Brown v. George, 17 N. H. 128; Hazeltine v. Wilson, 55 N. J. Law, 250, 26 Atl. 79; Black v. White, 13 S. C. 37; Lyons v. Daughtery (Tex. Civ. App.) 26 S. W. 146; Arbuckle v. Hawks, 20 Vt. 538. See, also, 20 Cyc. 180. Appellant contends that if the promise was an original undertaking, there was no consideration to support it, but this is clearly without merit.

[3] Appellant's fourth proposition is that appellee failed to procure a purchaser for the property upon terms acceptable to McBride. This point is without merit. While McBride, upon the first visit did refuse to accept the offer made by Cox, he was induced to accept it by representations made to him by Taylor, and later did so. Appellant contends that Taylor had been employed by McBride as agent to sell the property, and that he was the procuring cause of the sale. This con-

tention is, however, not supported by the evidence. It is not the broker who first speaks of the property, but the broker who is the procuring cause of the sale, be he the first or second, who engaged the attention of the purchaser, who is entitled to the commission. Patten v. Willis, 134 Ill. App. 645, 9 C. J. 618.

Finding no error in the record, the judgment will be affirmed; and it is so ordered.

PARKER, J.; concurs

HANNA, C. J., being absent, did not participate.

[On Motion for Rehearing, March 2, 1918.]

ROBERTS, J. Appellant has filed a motion for rehearing, and presents one point only which requires further discussion. He insists that the court, in passing upon the question raised in appellant's brief that the oral agreement between appellant and appellee was an undertaking to answer for the debt, default, or miscarriage of McBride and was within the statute of frauds, failed to consider the findings made by the court; that such findings show appellant's promise was a collateral undertaking. The court found, among other things:

"Defendant at said time agreed orally to protect plaintiff in his commission on the sale of the McBride ranch if he (plaintiff) made a sale thereof to Berry Cox."

This, appellant argues, is a direct finding that the oral agreement was a collateral undertaking, and it must be conceded that the finding, standing alone, lends support to appellant's contention. The findings, however, are to be construed together, and in other findings made by the court the situation of the parties was found and all the facts in the case fully set forth.

[4] The question as to whether a promise is a direct or collateral undertaking is not solely dependent upon the words used, but is to be ascertained from the

·words used in making the promise, the situation of the
parties, and all the circumstances surrounding the trans-
action.   The character of the promise does not depend
wholly upon the form of expression, but largely upon
the situation of the parties, and the question always is
what the parties actually understood by the language,
whether they understood it to be a collateral or a di-
rect promise.   Davis v. Patrick, 141 U. S. 479, 12 Sup.
Ct. 58, 35 L. Ed. 826. In a note to the case of Mankin
v. Jones, 15 L. R. A. (N. S.) 214, the author says:

"This intention should be gathered from the entire trans-
action, and will control regardless of the language used in
creating the obligation."

In the present case the findings made by the court,
relied upon by appellant, were not justified by the lan-
guage used by either party, as shown by the testimony.
Appellee testified that appellant said that he would
pay the commission, while appellant's testimony was to
the effect that he would see that the commission was
paid.   The court, after setting forth its findings and all
the material facts relative to the situation of the parties,
gave judgment ·for appellee, which could only have been
done upon the assumption that the promise was a direct
undertaking.   We think the surrounding facts and cir-
cumstances justified the court in concluding that the
promise to pay was a direct undertaking, for which rea-
son the former opinion will be adhered to, and the mo-
tion for rehearing will be denied.

HANNA, C. J., and PARKER, J. concur.