314 P.2d 892

Dr. Joseph M. PETERSON, d/b/a Albuquerque Osteopathic Hospital, Plaintiff-Appellee,

v.

William H. ROWE, M. H. Rowe and William W. Rowe, Defendants-Appellants.

No. 6207.

Supreme Court of New Mexico.

Aug. 27, 1957.

Henry A. Kiker, Jr., Patricio S. Sanchez, Albuquerque, for appellants.

Bingham, Maloney & Klecan, Albuquerque, for appellee.

COMPTON, Justice.

Appellee brought this action to recover for professional services rendered appellants' father. Issue was joined by a general denial. The cause was tried to the court and the judgment went against appellants, M. H. Rowe and William W. Rowe, and they appeal. The pertinent findings are:

"(2) That between the approximate dates of July 26, 1955, and September 11, 1955, plaintiff provided hospital care, laboratory facilities and medication to patient William H. Rowe at the special instance and request of his sons, M. H. Rowe and William W. Rowe.

"(3) That the statement for services rendered totaled $3,144.25; but defendants, M. H. Rowe and William W. Rowe paid on account $245.00, and the Southwest Blood Bank credited $160.00 to this account, leaving a balance of $2739.25.

"(4) That defendants, M. H. Rowe and William W. Rowe, made direct,

independent, unqualified and unconditional promises to pay for the hospital services rendered by plaintiff to William H. Rowe.

"(5) That plaintiff, in reliance upon the promises of defendants M. H. Rowe and William W. Rowe, did perform his part of the agreement."

Appellants contend (a) that the findings are not supported by substantial evidence, and, (b) that the contract, being oral, is within the statute of frauds. These contentions require a determination whether appellants are original promisors or mere guarantors. If the former, they are liable; if the latter, the statute is a complete defense. A review of the evidence convinces us that appellants are original promisors and not guarantors. It follows, both contentions must be rejected.

On July 26, 1955, when William H. Rowe was admitted to appellee's hospital, he was suffering from the effects of a severe gastric hemorrhage. He was first given emergency treatment, and later prepared for surgery, which was performed July 31, 1955. He was discharged from the hospital September 11, 1955. The hospital services, medicines, treatments, laboratory facilities, etc., amounted to $3,144.25, which amount was later reduced to $2,739.25 by appellants and Southwest Blood Bank.

█ The evidence discloses at least four conversations between the parties concerning payment for services to be furnished the patient. Appellants were at the hospital the day after William H. Rowe was admitted, and while there, discussed with appellee the matter of making financial arrangements. Appellee explained to appellants that the patient was very ill and would require extensive treatment. Appellants informed appellee that their father had no financial means, nevertheless, appellant, M. H. Rowe, stated that appellants themselves would pay for such services. His exact statement was: "You go right ahead and give him whatever is necessary to save his life and I will pay for it." Subsequently on July 29, appellants, accompanied by their wives, came to the hospital, and again appellant, W. H. Rowe, stated to appellee: "Well, we want you to do everything you can to save his life and we don't want you to spare any expense because whatever he needs, doctor, you go ahead and get it and I will pay you." On July 31, the date of the operation, appellants were at the hospital, and again the question of payment of expenses was renewed. At that time, M. H. Rowe voluntarily authorized the services of special nurses, stating: "because whatever he needs, I want him to have it and I will pay you for it." To which appellant William W. Rowe assented as follows: "That is correct, anything that—any expense." "Do not spare any expense on my father and I will pay you for it." The testimony of both Dr. Kinne and Dr. Andrews lends strong support to appellee. This evidence is substantial. Further, some three weeks later, the business manager of the hospital phoned appellants and ad-

-vised them that the expenses were continuing to mount, and asked them to come in and discuss the matter. They did, but stated they were just then short of cash. Appellant, M. H. Rowe, said: "We will pay you $200 now and then we will pay you $200 every month." He stated further: "My father has some property back in Missouri and we will put it on the market for sale and that when we sell the property why we will pay the entire balance off in full." Appellant, William W. Rowe, spoke up, saying, "that is correct". They then paid $200 and $45 later when threatened with litigation.

Of course, in the absence of an expressed contract, appellants would have been under no legal obligation to pay for the services rendered to their father. McGuire v. Hughes, 207 N.Y. 516, 101 N.E. 460, 46 L.R.A.,N.S., 577; Parshall v. Parshall, 56 Cal.App. 553, 205 P. 1083. But it was at appellants' request, and for their benefit, that the services were furnished; hence, the promise to pay was an original undertaking and is without the statute. Bunton v. Campredon, 24 N.M. 314, 171 P. 142; Rice v. Hardwick, 17 N.M. 73, 124 P. 800.

Appellants argue the point that appellee did not release the patient, William H. Rowe, from liability. True, but that is not important. Appellants, having contracted for the services, are in no position to complain that the father had not been released. Moon v. Greenlee, 69 Colo. 482, 195 P. 1100; Miller v. Hanna-Logan, 95 Colo. 464, 37 P.2d 393.

The judgment will be affirmed and remanded with direction to enter judgment against appellants and the sureties upon their supersedeas bond, and it is so ordered.

LUJAN, C. J., SADLER and McGHEE, JJ., concur.

KIKER, J., not participating.