Mike ABRAHAM, Oscar Abraham and J. R. Abraham, Appellants,

v.

H. V. MIDDLETON, INC., Appellee.

J. R. ABRAHAM, Appellant,

v.

NEW MEXICO AND ARIZONA LAND COMPANY, Appellee.

Nos. 6164, 6165.

United States Court of Appeals Tenth Circuit.

April 25, 1960.

Russell Moore, Albuquerque, N. M. (W. A. Keleher and A. H. McLeod, Albuquerque, N. M., were with him on brief), for appellant.

William C. Briggs and Jackson G. Akin, Albuquerque, N. M., for appellee, H. V. Middleton, Inc.

Daniel A. Sisk, Albuquerque, N. M. (of Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, N. M., was with him on brief), for appellee, New Mexico and Arizona Land Co.

Before MURRAH, Chief Judge, and BRATTON and LEWIS, Circuit Judges.

MURRAH, Chief Judge.

This is an appeal from a judgment of the District Court of New Mexico in a diversity suit by appellee upon an oral promise to pay for the drilling of an oil well. Appellants' principal contention in the trial court and here is that their oral promise was within the Statute of Frauds as a promise to pay the debt of another. The question is presented on the following facts found by the trial court, which though formally disputed in part by appellants, are clearly supported by substantial evidence.

In June 1956, appellants Mike, Oscar and J. R. Abraham, doing business as a partnership or joint venture, entered into a farm-out agreement with Gore and Williams, whereby the latter agreed to drill a well on a designated part of an 8,000 acre oil and gas lease in Valencia County, New Mexico. Gore and Williams in turn contracted with appellee H. V. Middleton, Inc., for the drilling of the well. Contemporaneously with this drilling contract, Gore and Williams gave Middleton a $20,000 five-day sight draft as an advance partial payment of Middleton's costs. About the time Middleton commenced drilling operations, the sight draft was dishonored, and Middleton thereupon advised Oscar Abraham that it would forthwith cease operations

unless given assurance that it would be paid according to the drilling contract. Abraham then requested Middleton to continue its operations, and orally promised to assume the Gore-Williams obligations. Middleton thereupon continued drilling operations, and submitted a letter to the Abrahams stating, "Had it not been for your agreement with me, to assume the obligations relative to the drilling of this well, I would have shut down operations as I threatened to do on July 31st." At Middleton's request, Oscar Abraham "accepted and acknowledged" the letter by his signature at the bottom. Later, and during the drilling operations, Oscar Abraham went to the drill site and ordered the operations to cease, telling Middleton's employee, "We are going to find out who is going to pay for this, us or Gore." Drilling operations did cease, and were resumed on the following day upon the order of Oscar Abraham. About this same time, the Abrahams and Gore entered into a second farm-out agreement, by which Gore would receive assignments of a part of the Abrahams' oil interests if the well was completed to 5,000 feet or production. After the completion of the well, and upon the Abrahams' request, Middleton left his rig at the drill site for about four months more. During this time, Oscar Abraham sought financing for the payments due Middleton under the contract, though Gore and Williams had not been released from their contractual obligations. It being apparent that Gore and Williams were unable to pay their obligations, Middleton made demand directly upon the Abrahams. When the Abrahams refused payment, Middleton brought this suit to recover its compensation under the contract.

To be sure, the Abrahams' oral promise was literally to pay the debt of another. But the trial court nevertheless gave judgment for Middleton, concluding that the oral promise was without the Statute of Frauds for three reasons:

(1) because Middleton fully performed the drilling contract in reliance upon the oral promise; (2) because the Abrahams made the promise for their own pecuniary advantage; and (3) because the accepted letter memorandum was sufficient to satisfy the requirements of the Statute. Appellants attack, as they must, all three reasons, for if any one of them is sustainable in law and fact, the trial court must be affirmed.

 There are a variety of tests for determining whether an oral promise is within the Statute as a promise to pay the debt of another. See 2 Williston, Contracts § 462 (Rev.Ed.1936). But we deem it sufficient to say that the trial court's judgment is correct because the Abrahams' oral promise to pay the obligations of the drilling contract was made primarily for their own benefit. The very purpose of this part of the Statute is to vouchsafe " * * * that a promisor receiving no benefits should be bound only by the exact terms of his promise * * *." Mr. Justice Brewer in Davis v. Patrick, 141 U.S. 479, 488, 12 S.Ct. 58, 59, 35 L.Ed. 826; and see also Emerson v. Slater, 22 How. 28, 43, 16 L.Ed. 360; 2 Williston, Contracts § 452 (Rev.Ed.1936). This reasoning has led courts to consider an oral promise outside the Statute if a new and beneficial consideration flows to the promisor, even though the promise is literally to pay the debt of another. See 2 Williston, Contracts § 472 (Rev.Ed.1936); Annotation, 64 A.L.R.2d 1071, 1083. By parity of reasoning, other courts, including New Mexico, hold that a promise is without the Statute if the "main object" of the promisor in making the promise was "to subserve a pecuniary or business purpose of his own, though incidentally it would have the effect of extinguishing the debt due appellee * * *."[1] Telman v. Galles, 41 N.M. 56, 63 P.2d 1049, 1052; see also Peterson v. Rowe, 63 N.M. 135, 314 P.2d 892, 64 A.L.R.2d 1067; Rice v. Hardwick, 17 N.M. 73, 124 P. 800; 1

---

1. For discussions of the relationship between consideration as required for all contracts and beneficial consideration or business purpose as taking an oral promise out of the Statute, see Williston, Contracts §§ 470, 472 (Rev.Ed.1936).

Restatement, Contracts § 184; 2 Williston, Contracts § 470 (Rev.Ed.1936). In essence then, if a promisor's self-serving ends are dominant, there is no reason under the Statute for suspecting his oral promise.

■ The "main object" of the Abrahams in their dealings with Middleton is manifest. They owned extensive mineral interests in the acreage adjacent to that covered by the lease here involved, and would thus stand to gain substantially if production developed. Furthermore, on the date of their oral promise, they agreed with their lessor, New Mexico and Arizona Land Company, that if the well was drilled, they would receive some $16,000 then placed in escrow and which would otherwise be paid to the lessor. The inescapable inference is that the Abrahams' promise was made primarily for their own business benefit. And furthermore, it effected the desired business result, i. e., by virtue of their promise, the Abrahams received a new and beneficial consideration—the drilling of the well.

■ Appellants take the position, however, that though the oral promise was primarily for the promisor's own advantage, it is nevertheless within the Statute until the first obligor is released or discharged, citing 49 Am.Jur., Statute of Frauds, 437. See also 2 Williston, Contracts, § 469. But as we interpret the rule announced in the cited authorities, it is to the effect that a promise to pay the pre-existing and unreleased debt of another is within the Statute, unless it is shown that " * * * some independent benefit, the securing of which is the primary purpose of the promise, accrues to the promisor * * *," see 49 Am.Jur., Statute of Frauds 437, or otherwise stated, " * * * unless the new promisor has assumed the debt as his own; that is, unless he has come into the position of a primary obligor * * *." See 2 Williston, Contracts 1351 (Rev.Ed.1936). Since we hold that the Abrahams became the primary beneficiaries of the obligation which they assumed and agreed to pay, the rule has no application here. In any event, we are convinced that manifest benefit to the promisor and assumption by him of the obligations as his own are entirely sufficient to satisfy the purpose of the Statute, and in our case constitutes a conclusive answer to the plea. The trial court correctly enforced the Abrahams' oral promise.

■ The Abrahams also complain of the excessiveness of the judgment in that some of the charges allowed by the trial court were not provided for in the drilling contract. The trial court's method of computation, which appears of record, indicates that he gave full credence to Middleton's invoice detailing the various charges, except that he made a downward adjustment in the amount chargeable for the time the rig was in place at the Abrahams' request after drilling had been completed. All of the charges thus billed are readily supportable by the drilling contract and evidence of record, and having been credited by the trial court, are not discreditable here.

■ In separate appeal Number 6165 of a related case, appellant J. R. Abraham contests the trial court's judgment allowing the lessor New Mexico and Arizona Land Company attorney fees, according to an indemnity provision in the lease, for defending foreclosure suits upon liens filed by Middleton and other creditors. The trial court found that the challenged attorney fees "were reasonable and necessary to its [New Mexico and Arizona Land Company's] defense of the aforesaid foreclosure suits and its efforts to remove the encumbrances from its land." Appellant concedes the propriety of fees for the defense of the foreclosure suits, but attacks the finding of the court in that regard, contending that part of the fees allowed were attributable to the present suit for the enforcement of the indemnity provision itself. Since the trial court's finding is supportable by record testimony that the fees were all incurred in connection with specific foreclosure litigation, and in view of the lack of any contrary evidence, the trial court's finding is far from "clearly erroneous" and therefore must stand.

The judgments are affirmed.