399 P.2d 927

**BEACON SUPPLY COMPANY,**
Plaintiff-Appellant,

v.

**AMERICAN FIBER CORPORATION,** See Tee Mining Company, Inc., and Stella Dysart, Defendants-Appellees.

No. 7532.

Supreme Court of New Mexico.

March 1, 1965.

Threet, Threet, Glass & King, Albuquer-que, for appellant.

Poole & Poole, Albuquerque, for appel-lees.

MOISE, Justice.

· This suit was instituted by plaintiff-appellant, hereinafter referred to as "Beacon" against defendants, American Fiber Corporation, hereinafter referred to as "American Fiber," See Tee Mining Company, Inc., hereinafter referred to as "See Tee," and Stella Dysart, hereinafter referred to as "Dysart." The complaint is framed in three causes of action. · The first is against American Fiber to recover $5,-848.46, together with interest and attorney fees due on a promissory note executed by American Fiber, and a further sum of $217.96 with interest thereon by virtue of an open account owing by American Fiber to Beacon. The second cause of action against American Fiber and See Tee was dismissed by Beacon at the commencement of the trial and need not be further noticed. The third cause of action was against American Fiber, See Tee, and Dysart on the same note and account, but alleged that Dysart is a major stockholder of See Tee which, in turn, owned all the stock of American Fiber; that upon demand being made for immediate payment of the note and account Dysart requested a 90-day forbearance, in consideration for which she promised the execution of a new note representing the total owing, and that she would endorse the same and pay it when due; that she had not executed the note as agreed, nor paid the amounts owed; and that judgment was requested against the three defendants for the amount of the original note with interest and attorney fees, and for the amount of the open account together with interest.

After trial, the court entered judgment for Beacon against American Fiber as prayed in Count I, and dismissed the complaint as to See Tee and Dysart. From this judgment Beacon has appealed.

The points and arguments asserted by Beacon are directed at the findings and conclusions made by the court concerning Dysart, no complaint being advanced concerning the court's failure to give judgment against See Tee. It is asserted that certain findings are not supported by substantial evidence but, to the contrary, that all evidence is otherwise and that accordingly the conclusions based thereon are erroneous.

The findings so attacked are the following:

"14. That on April 26, 1961, the defendant Stella Dysart orally promised to pay the amount of the promissory note executed by the American Fiber Corporation to the Beacon Supply Company, and Mr. Shellhammer on behalf of the plaintiff agreed to forebear on said promissory note."

"24. That defendant Stella Dysart was never shown a new promissory note to be executed to replace said promissory note and that she was never directly requested by Plaintiff to execute said new promissory note either as a co-maker, endorser, guarantor or otherwise."

"26. That defendant Stella Dysart derived no benefit or advantage personal to her from any forebearance of plaintiff against defendant American Fiber Corporation in attempting to collect said promissory note from on or about April 26, 1961 to the date of suit herein."

The conclusions based thereon and claimed to be in error, are:

"2. That defendant American Fiber Corporation is indebted to plaintiff in the sum of $5,848.46 under the terms of a promissory note as the principal amount therein, plus $824.38 as interest thereon, from April 12, 1961, to date, and $667.28 as and for attorney's fees thereon, and plaintiff shall have judgment therefor.

"3. That defendant American Fiber Corporation is indebted to plaintiff in the amount of $217.96 on open account, together with interest thereon from the date of _____ in the amount of _____ Dollars ($_____), and plaintiff shall have judgment therefor."

"5. That defendant Stella Dysart is not indebted to plaintiff on or with respect to said promissory note.

"6. That defendant Stella Dysart is not indebted to plaintiff on said open account.

"7. That any oral promise made by defendant Stella Dysart on or about April 26, 1961, to answer for the debt or default of American Fiber Corporation was without legal consideration and is not enforceable.

"8. That any oral promise made by defendant Stella Dysart on or about April 26, 1961, to answer for the debt or default of American Fiber Corporation had as its main purpose and object to answer for the debt or default of another and was not made to subserve any pecuniary, business or other personal purpose or object of her own, and any claim arising therefrom is barred by the statute of frauds."

It is conceded that if the court's findings are held to be supported, the conclusions follow and are correct.

Beacon also submitted requested findings and conclusions supporting its views and theories. All were refused, and this is claimed to be error.

We think that a fair summary of the evidence which Beacon asserts is uncontradicted and demonstrates the lack of support of the findings is as follows: A Mr. Shelhamer, who was Secretary-Treasurer of Beacon at the time, testified generally that on or about April 26, 1961, the note in the amount of $5,848.46, executed by American Fiber to Beacon, together with an open account in the amount of $217.96,

being past due, he came to Albuquerque to see if he could effect collection. Further, he testified that after talking to Mr. DeVilliers, President of American Fiber, he was asked to talk to Dysart. He testified that he did this and that Dysart stated that if Shelhamer would "extend or renew the note and not file any suits for ninety days, that she would sign the new note and pay it when it was due." He stated that when he came to Albuquerque he was not willing to give American Fiber additional time to pay, and so advised Dysart, and as of that day the ninety days began to run and thereafter he looked entirely to Dysart for payment and not at all to American Fiber. He asserted that he prepared a new note and sent it to DeVilliers for his and Dysart's signature but that it was never returned. Upon being asked concerning the status of the original promissory note and open account after the conversation with Dysart, Shelhamer stated, "The old promissory note and the open account with interest was all merged into the new note, as per our agreement."

Beacon finds corroboration for the foregoing in the testimony of DeVilliers, a part of which follows:

"Q Do you recall Mr. Shellhammer coming to the offices of American Fiber on or about April 26th, 1961, to talk to you in regard to the payments due on this note?

"A  Generally I recall that, yes. I don't have any specific recollection of the date, however.

"Q  Can you tell us what occurred at that time?

"A  As nearly as I can recall, I believe Mr. Shellhammer said he had been required by his company —there was some type, some sort of re-organization going on, or sale of Beacon Supply, and they had to either work out satisfactory arrangements or they were forced to file a suit for the collection of the note.

"Q  What did you tell Mr. Shellhammer?

"A  I told Mr. Shellhammer the only thing I knew for him to do was to go to Miss Dysart.

"Q  Do you know whether or not he did so, sir?

"A  Yes, he did.

"Q  Did you hear any portions of the conversation relating to the agreements in regard to this note between Mr. Shellhammer and Miss Dysart?

"A  Yes.

"Q  And could you relate, as nearly as you can recall it, what the conversation was between Mr. Shellhammer and Miss Dysart.

"A  Well, I went into Miss Dysart's office a while after Mr. Shellhammer had left the See Tee and American Fiber office and Miss Dysart and he were in a quite cheerful mood, and Miss Dysart inferred to me that they had settled the differences satisfactorily. She said, 'Isn't that right, Mr. Shellhammer?' and he said, 'Yes, it is.'

"Q  And were the terms of this settlement explained to you?

"A  Not in detail.

"Q  Well, as near as possible can you recall what the terms of the settlement were?

"A  Not the terms. I knew Miss Dysart was to obtain an extension of time, and Mr. Shellhammer said that he would prepare a new note and send it for her to sign, and she said, 'All right.'

"Q  And who was to pay this new note, Mr. DeVilliers?

"A  Well, it was my understanding that if American Fiber wasn't able to pay it that Miss Dysart would.

**34**

"Q Now, then, were they to look to her first, or was it to be the joint obligation of American Fiber and Miss Dysart, as far as you could understand?

"A Well, as far as I could understand they were going to look to American Fiber and she was going to guarantee payment."

In addition, Mr. DeVilliers testified that Dysart suggested or advised that she would endorse the note and pay it when it came due, and she then turned to Mr. Shelhamer for verification of the fact, and that he agreed. Further, his testimony was that the obligation was to be a joint one of American Fiber and Dysart.

Whereas Beacon offers the foregoing as uncontroverted and unimpeached evidence which it was error for the trial court to ignore or disregard under the rule announced by us in Greenfield v. Bruskas, 41 N.M. 346, 68 P.2d 921, Dysart points to the following which she asserts to be proof supporting the findings made by the court: On May 1, 1961, Mr. Shelhamer, only five days after the meeting he described, sent a letter to DeVilliers in which he enclosed a note dated April 24, 1961, for $6,160.81 (the amount of principal and interest on the past due note, and the open account and interest) due ninety days after date, in which he said, "We ask that you please sign this note and have Miss Stella Dysart personally endorse it and return it to me at your earliest convenience. * * *," without any reference whatever to an agreement. In addition, the note as prepared showed at the line where it was to be executed, "American Fiber Corporation" typed in, and under it "By: —————————," with Dysart's name not appearing thereon, or any place provided or designated for signature by her. Thereafter, on May 18, 1961, Shelhamer sent a telegram to DeVilliers reading, "Have not received your note on American Fiber Corporation to Beacon Supply Company mailed to you May 5. Please sign and return immediately." Again, there is no reference to any agreement with Dysart. It appears that Dysart herself was called as a witness and denied any agreement. With these facts in mind, can it be said that the testimony relied on by Beacon is uncontroverted and unimpeached and that the court was accordingly bound to find the agreement asserted by Beacon? We think not. Without in any way seeking to detract from the rule stated in Greenfield v. Bruskas, supra, and reiterated recently in In re Williams' Will, 71 N. M. 39, 66, 376 P.2d 3, we would call attention to the following language in Waters v. Blocksom, 57 N.M. 368, 371, 258 P.2d 1135, 1137:

"* * * The general rule that uncontradicted testimony cannot be disre-

garded by the court, is subject to many qualifications and exceptions. As it is the duty of the trial court to determine what credit and weight shall be given to the testimony, an appellate court will not disturb a finding or conclusion denying credence, unless it appears that there are no facts or circumstances which at all impair the accuracy of the testimony. * * *"

It would seem evident from the above review of the evidence, that aside from the direct testimony there are facts and circumstances which reflect on the accuracy of the answers made to questions put to the witnesses, and that the trial court denied full credence to the testimony of the witnesses. Whether the testimony of a witness is so impeached as to render his testimony unworthy of belief is a matter for the trial court to determine. Las Cruces Motor Co. v. Conover, 35 N.M. 15, 288 P. 1065. This court will not substitute its judgment for that of the trial court as to credibility of witnesses. Drake v. Rueckhaus, 68 N.M. 209, 360 P.2d 395. In addition, we would observe that findings 14 and 24 seem to accord with the third count as pleaded by Beacon. Under the circumstances, the rule quoted from Waters v. Blocksom, supra, gives the trial court complete support. Its findings will not be disturbed.

Beacon, in its brief, concedes that if it is determined that findings 14 and 24 are supported by substantial evidence, the conclusions of law attacked by it follow, unless it is determined that Dysart received some advantage or benefit personal to herself from the transaction, contrary to finding 26 of the court. If this finding is supported, then conclusion 8 was proper. The rule that the statute of frauds is not a defense in a suit brought upon an agreement where the main object of the party sought to be charged, in entering into the agreement, was to subserve a pecuniary or business purpose of his own even though incidentally the effect was to extinguish the debt of another, has long been recognized in New Mexico. See Rice v. Hardwick, 17 N.M. 73, 124 P. 800; Pace v. Springer, 23 N.M. 586, 170 P. 879; Telman v. Galles, 41 N.M. 56, 63 P.2d 1049; Peterson v. Rowe, 63 N.M. 135, 314 P.2d 892, 64 A.L.R.2d 1067. Also see Abraham v. H. V. Middleton, Inc. (C.A.10, 1960) 279 F.2d 107, a case arising in New Mexico, where the New Mexico law was applied.

Accordingly, can we say that Dysart made the promise to pay the amount of American Fiber's note for her own personal benefit and advantage, or to serve some pecuniary or business end of her own? She had no obligation to pay the note by virtue of her one-half ownership

of See Tee, even though See Tee owned American Fiber. So far as the record discloses she had no knowledge of American Fiber or its operations, and it is not clear if American Fiber was operating or dormant at the time. Although the record discloses that she said she was in need of her cash for certain deals she was working on at that time, since she had no duty or obligation to provide cash for American Fiber's debt, we fail to see the materiality of the assertion. Likewise, it does not appear how she could have been adversely affected if Beacon had proceeded to attempt to collect from American Fiber. Under the circumstances, why did she make the promise which the court found that she had made? What could have been her object? To get ninety days forbearance for American Fiber surely, but what benefit or consideration passed to her? Under all the facts and circumstances we cannot say that the court erred in its finding that there was neither benefit nor consideration passing to her. Hutchison v. Boney, 72 N.M. 194, 382 P. 2d 525, is not to the contrary. The promise sought to be enforced was accordingly within the statute of frauds.

For the reasons stated the judgment appealed from is affirmed. It is so ordered.

CARMODY, C. J., and COMPTON, J., concur.