750 P.2d 114

**STATE of New Mexico for the Use of ELECTRIC SUPPLY COMPANY, INC., a New Mexico corporation, Plaintiff–Appellee,**

v.

**KITCHENS CONSTRUCTION, INC., a New Mexico corporation, and Industrial Indemnity Company, Defendants–Appellants.**

No. 17011.

Supreme Court of New Mexico.

Feb. 4, 1988.

Rehearing Denied Feb. 26, 1988.

Arthur A. Greenfield, Albuquerque, for defendants-appellants.

Robinson & Wainwright, Paul S. Wainwright, Lisa E. Jones, Albuquerque, for plaintiff-appellee.

## OPINION

WALTERS, Justice.

Electric Supply Company (ESCO) sued general contractor Kitchens Construction, Inc. (Kitchens) and its surety, Industrial Indemnity Company, under the Little Miller Act, NMSA 1978, Section 13–4–19 (Repl. Pamp.1985), to recover $61,124.53 for materials that ESCO supplied to the subcontractor Klein Electric Company for a state construction project. After a bench trial, the district court entered judgment for ESCO, and Kitchens appeals. We affirm.

In a conversation with ESCO's credit manager, the president of Kitchens offered to have its subcontractor payment checks made payable jointly to Klein and ESCO to ensure that ESCO would be paid for materials it would provide to Klein. ESCO declined the offer. After Klein left the job, Kitchens agreed to pay for job materials that ESCO had supplied to Klein if ESCO would open the locked trailer at the jobsite in which Klein had stored the materials. That promise was not evidenced by a writing. ESCO opened the trailer and made an inventory of its contents. Kitchens used some of these materials to complete its job, and made a partial payment of $12,744.62 to ESCO for the materials but later stopped payment on the check.

At trial, ESCO introduced into evidence the unpaid computerized invoices for all materials it supplied to Klein after April 1, 1984, having released Kitchens from liability on any unpaid invoices prior to that date. It also introduced its "picking" lists and Klein's purchase orders. Esco's picking lists were a compilation of a customer's purchase orders. In the ordinary course of business, the picking lists were fed into a computer database, and the invoices were produced from the data compilation in the computer. ESCO sought recovery of the amount due shown by those invoices.

Kitchens argues that ESCO was estopped from bringing a Little Miller Act suit because ESCO's refusal to accept its offer of jointly-payable checks precludes ESCO's recovery under circumstances that Kitchens had attempted to avoid. It further claims that Exhibit 1, ESCO's invoices, was inadmissible under SCRA 1986, Sections 11–803 and 11–1001 to –1003, because the invoices were produced especially for this litigation, and were generated from data different from the data compilation from which the original invoices were produced. Kitchens calls to our attention that items on the original invoices were described by catalogue numbers whereas the invoices introduced at trial described items by brand names. Specifying Rule 803, Kitchens argues that ESCO produced no witness to correlate the numbers and the brand names, nor did it produce a witness who entered the information into the computer to lay a proper foundation for the exhibit. Kitchens also objects under the best evidence rule because neither the original invoices nor their duplicates were offered at trial.

In the alternative, Kitchens urges even if the invoices were admissible, its promise to pay ESCO is not enforceable by reason of the statute of frauds, NMSA 1978, Section 55–2–201. Kitchens would concede that, under Section 55–2–201(3)(b), it could be held liable for the goods stored in Klein's trailer (which totaled $5,564.00) but that it promised to pay only for the goods in the trailer, not to guarantee Klein's total indebtedness.

In responding to Kitchens's points, ESCO denies the estoppel argument, contending

that Kitchens did not rely to its detriment on ESCO's refusal of the offer of jointly-payable checks, and that Kitchens's promise to pay Klein's indebtedness falls outside the statute of frauds because the main function of the promise was to serve a pecuniary interest or business purpose of the promisor, even though the incidental effect was to extinguish a debt of another. Instead, argues ESCO, the promise initiated a direct contractual relationship between Kitchens and ESCO because there was consideration for the promise and because the benefits inured to Kitchens. With respect to Exhibit 1, ESCO asserts that its invoices met the requirements of the rules of evidence because they were generated from data compiled at the time of the underlying transactions. Even though they were not original invoices, ESCO claims that they were produced from its original data compilation.

■ At trial Kitchens moved to amend its answer to include the statute of frauds defense under NMSA 1978, Section 55–2–201. The trial court denied the motion. ESCO thus claims that the defense is not properly before us. Nevertheless, it appears that the issue was litigated. Thus, although it is well-settled that an oral agreement to guarantee the debts of a third party is not ordinarily enforceable, it is equally undeniable that if the principal purpose of the agreement is to subserve the pecuniary interests of the promisor, the statute of frauds will not apply. *Beacon Supply Co. v. American Fiber Corp.*, 75 N.M. 29, 35, 399 P.2d 927, 931 (1965); *Rice v. Hardwick*, 17 N.M. 73, 78, 124 P. 800, 801–02 (1912); *Ries Biologicals, Inc. v. Bank of Santa Fe*, 780 F.2d 888, 891 (10th Cir.1986); *Abraham v. H.V. Middleton, Inc.*, 279 F.2d 107, 109 (10th Cir.1960). The incidental effect of Kitchens's promise to ESCO was to extinguish Klein's debt, but Kitchens also benefitted in that it obtained access to materials which allowed it to finish the job and thus further its own business purpose. We agree that Kitchens's statute of frauds defense fails.

■ More importantly, if ESCO has a cause of action under the Little Miller Act,

any statute of frauds defense disappears. The Little Miller Act was enacted to protect suppliers of materials under any subcontract involving a state construction project. *State ex rel. W.M. Carroll & Co. v. K.L. House Constr. Co., Inc.*, 99 N.M. 186, 187, 656 P.2d 236, 237 (1982). If the general contractor and the supplier have no direct contractual relationship, the supplier must give notice of his claim within ninety days of the date the last material was supplied to the subcontractor. NMSA 1978, § 13–4–19(A). Kitchens contends that ESCO did not furnish anything within the ninety days before ESCO made its claim, but the trial court found a direct contractual relationship between ESCO and Kitchens both before and after Klein left the job. As Kitchens argues, there may not be sufficient evidence of such a relationship before Klein terminated, but there is ample evidence of that contractual relationship afterward, especially in the evidence regarding the material stored in the trailer and Kitchen's aborted payment of approximately $12,000 directly to ESCO. Consequently, the 90–day notice requirement does not apply. *American Casualty Co. v. Southern Materials Co.*, 261 F.2d 197, 199 (4th Cir.1958).

■ Estoppel, however, may be a defense in a Miller Act case. *Graybar Elec. Co. v. John A. Volpe Constr. Co.*, 387 F.2d 55, 59 (5th Cir.1967); *United States ex rel. Westinghouse Elec. v. James Stewart Co.*, 336 F.2d 777, 780 (9th Cir.1964). In *Westinghouse,* on which Kitchens heavily relies, the general contractor offered to issue checks payable jointly to the subcontractor and the supplier but the supplier declined, committing itself to notify the general contractor if the subcontractor failed to make payments. *Id.* at 778. The general contractor subsequently made payments to the subcontractor, and the subcontractor went bankrupt. *Id.* The supplier then sued the general contractor under the Miller Act, and the court held that the supplier was estopped because the general contractor had detrimentally relied on the supplier's agreement to notify. *Id.* at 780; *see also Graybar*, 387 F.2d at 59 (supplier estopped

under Miller Act when it endorsed general contractor's checks back to subcontractor after checks made payable to supplier and subcontractor). The essential elements of equitable estoppel are set out in *McDonald v. Kerr–McGee Corp.*, 93 N.M. 192, 193–94, 598 P.2d 654, 655–56 (Ct.App.1979). Here, there was no conduct of or representations by ESCO on which Kitchens reasonably could rely. ESCO made no affirmation to Kitchens concerning notification of Klein's failure to make payments, and there was no conduct on ESCO's part for Kitchens to have relied on to its detriment. ESCO consequently is not estopped from pursuing its claim under the Little Miller Act.

■ Regarding the invoice evidence, under Rule 803 computer data compilations may be construed as business records themselves, and they should be treated as any other record of regularly conducted activity. *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir.1980). Although a computer printout ordinarily is made after completion of all regular dealings with a party, the printout is admissible if its contents were stored and compiled at the time of the underlying transactions. *Westinghouse Elec. Supply Co. v. B.L. Allen, Inc.*, 138 Vt. 84, 100, 413 A.2d 122, 132 (1980). If the entries were made in the regular course of business for business purposes, there is no need to produce the original files. *Transport Indem. Co. v. Seib*, 178 Neb. 253, 259, 132 N.W.2d 871, 875 (1965); *McAllen State Bank v. Linbeck Constr. Corp.*, 695 S.W.2d 10, 16 (Tex.App.1985); *Westinghouse*, 138 Vt. at 100, 413 A.2d at 132. Furthermore, as long as the custodian of the records or any other qualified person testifies about the foundational requirements, the records are admissible. *State v. Ruiz*, 94 N.M. 771, 775, 617 P.2d 160, 164 (Ct.App.1980).

A qualified witness is one capable of testifying to the manner of preparation of the records and their safekeeping. *Id.* The phrase "other qualified witness" is given the broadest interpretation; the witness need not be an employee so long as he understands the system, and he need not be the person who prepared the records.

*Id.; see Rosenberg*, 624 F.2d at 665 (any person in position to attest to authenticity of certain records is competent to lay foundation for admissibility of records; he need not have been preparer of records, nor must he personally attest to accuracy of information contained in records); *Smith v. Bank of the South*, 141 Ga.App. 114, 114, 232 S.E.2d 629, 630 (1977) (while lack of personal knowledge of making of business record on part of witness might affect weight, absence of personal knowledge shall not affect admissibility); *Transport Indemnity*, 178 Neb. at 258, 132 N.W.2d at 874 (not necessary to produce or identify witnesses who originally supplied information for record, only one familiar with procedure for keeping records); *State v. Springer*, 283 N.C. 627, 636, 197 S.E.2d 530, 536 (1973) (must lay proper foundation for computerized entries with testimony of witness who is familiar with computerized records and the methods by which they are made).

Because it is an exercise of the trial court's discretion to determine the trustworthiness of the documents, *Kirk Co. v. Ashcraft*, 101 N.M. 462, 468, 684 P.2d 1127, 1133 (1984), and because the invoices do not appear to have been produced in anticipation of litigation but were generated instead from an already existing data compilation that was prepared during ESCO's relationship with Klein, the invoices were admissible under Rule 803. We note that ESCO produced two witnesses to attest to the procedure by which the records were prepared. The invoices are admissible under the evidence rules governing contents of writings and recordings (Rules 11–1001 to –1008), as well, because the computer printout was a product of the original data compilation, and we will not require that the original documents or records be produced when the trial court has heard testimony, from those familiar with the system, that the database from which the computer printouts were made was a compilation of the original records. Rule 11–1001(C) provides that a computerized data compilation or printout is an original record. *See also Rosenberg*, 624 F.2d at 665. Even so, ESCO did introduce the original picking

lists and purchase orders which had been fed into its computer.

Having reviewed all of the points raised by appellant, we find no error.

The trial court is AFFIRMED.

SOSA, Senior Justice, and STOWERS, J., concur.