O-N-L MILLS, INC., A CORPORATION, APPELLANT, V. UNION PACIFIC RAILROAD COMPANY, A CORPORATION, ET AL., APPELLEES.

39 N. W. 2d 501

Filed October 27, 1949. No. 32635.

*Kirkpatrick & Dougherty,* and *E. L. Vogeltanz,* for appellant.

*C. B. Matthai, G. C. Holdrege, R. B. Hamer,* and *T. F. Hamer,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action in which plaintiff seeks to recover damages caused by a fire allegedly negligently set by defendant railroad and its engineer, also a defendant. Issues were made and trial had. At the close of the evidence for the plaintiff each defendant moved for a directed verdict. The trial court sustained the motions, entered judgments for the defendants, and dismissed plaintiff's cause with prejudice. Plaintiff appeals. We affirm the judgment of the trial court.

Plaintiff is the owner of a tract of land 300 feet square lying north of and adjoining the right-of-way of the defendant railroad east of Ord in Valley County.

As assignee of a lease with defendant railroad, plaintiff also had possession of a strip of land 26.5 feet wide and 300 feet long adjoining its property on the south, so that plaintiff's holding was 300 by 326.5 in size. This land originally was leased by the defendant railroad to Saunders Mills, Inc., to be used for an alfalfa dehydrating plant. The lease contained this provision: "It is understood by the parties hereto that the leased premises are in dangerous proximity to the tracks of the Lessor, and that by reason thereof there will be constant danger of injury and damage by fire, and the Lessee accepts this lease subject to such danger. It is therefore agreed, as one of the material considerations for this lease and without which the same would not be granted by the Lessor, that the Lessee assumes all risk of loss, damage or destruction of or to buildings or contents on the leased premises, and of or to other property brought thereon by

the Lessee or by any other person with the knowledge or consent of the Lessee, *and of or to property in proximity to the leased premises when connected with or incidental to the occupation thereof,* and any incidental loss or injury to the business of the Lessee, where such loss, damage, destruction or injury is· occasioned by fire caused by, or resulting from, the operation of the railroad of the Lessor, whether such fire be the result of defective engines, or of negligence on the part of the Lessor or of negligence or misconduct on the part of any officer, servant or employe of the Lessor, or otherwise, and the Lessee hereby agrees to indemnify and hold harmless the Lessor from and against all liability, causes of action, claims, or demands which any person may hereafter assert, have, claim òr claim to have, arising out of or by reason of any such loss, damage, destruction or injury, including any claim, cause of action or demand which any insurer of such buildings or other property may at any time assert, or undertake to assert, against the Lessor." (Emphasis supplied.)

The lease was assigned in writing to plaintiff and contained this provision: "The Assignee hereby accepts the above assignment and agrees to be bound by and to perform and observe fully and faithfully all of the covenants, stipulations and conditions contained in said agreement to be performed and observed by the Assignor and *assumes all liabilities mentioned in said agreement to be assumed by the Assignor."* (Emphasis supplied.)

There was constructed on the property so owned and leased an alfalfa dehydrating plant. From south to north there were on the leased premises, first, a loading dock, and to the north of it a meal warehouse. To the east about 20 feet and largely on the leased property was a two-story mill building. To the north, as a part of the mill but not on leased property, was a one-story struc-·ture. To the north of the mill and lengthwise north and south was a hay warehouse 96 by 60 feet and 24 feet to the eaves. The south side of this warehouse was 57 feet

from the north line of the defendant railroad's right-of-way. It was built entirely upon plaintiff's land. Between the mill and the hay warehouse was built a one-story passageway for a conveyor from the warehouse to the mill. This small building was not physically attached to the hay warehouse. Other structures on the premises need not be mentioned.

The hay warehouse was covered with one-by-twelve inch boards on the sides, and cracks as wide as one-half inch in places were between the boards. The roof was metal. The function of the warehouse was to store hay prior to milling operations.

On the morning of March 25, 1948, there were in the warehouse considerable equipment and, within and in two stacks about 60 feet to the north of the warehouse, 459 tons of baled alfalfa hay. A strong wind was blowing from the southeast. About 11:30 that morning the train of defendant railroad passed plaintiff's property. At that time large amounts of black smoke were coming from the engine. This smoke was carried close to the ground across plaintiff's property. Within ten minutes smoke was seen coming from the south center of the hay warehouse, immediately followed by fire which spread rapidly and entirely destroyed the warehouse, its contents, and the hay outside. That afternoon the smoke arrester was not on the smokestack of the engine as it had been in the past.

The plaintiff sued the railroad and its engineer, alleging that they caused the engine to be fired up as it passed plaintiff's property and negligently caused the engine to throw out sparks and coals of fire and cast them upon plaintiff's property causing the fire and resulting damage. The plaintiff charged particular acts of negligence in that the defendants knew the engine was not equipped with spark arresters or other fire preventives; that the defendants knew or ought to have known that the wind was from the southeast; and that the engine was casting out sparks and coals of fire upon the property of the

plaintiff, caused by the firing of the engine as it approached.

Defendants denied generally, specifically denied negligence, and pleaded the terms of the lease and the assignment above set out.

The trial court sustained the motion of defendant engineer on the ground that the evidence was insufficient to establish negligence as to him and for the further reason that by the lease agreement plaintiff had expressly assumed the risk, including that of negligence on the part of employees of the railroad. The court sustained the motion as to defendant railroad on the ground that all of the property destroyed was property in proximity to and connected with or incidental to plaintiff's occupation of the leased premises and that defendant railroad had been exempted from liability by the lease agreement.

Pursuant to rule 8 a 2 (4) of this court, we limit our consideration to errors assigned and discussed.

As to the liability of defendant railroad, plaintiff presents two contentions. The first is that the exemption in the lease, emphasized above, does not extend to the hay warehouse, the nearest point of which was 57 feet from the railroad right-of-way, nor to the hay outside the warehouse which at its nearest point was 213 feet from the right-of-way. Plaintiff, conceding that the defendant railroad had the right to exempt itself from loss to all property of plaintiff, argues that it did not do so in this instance. Plaintiff's argument is that we must interpret the contract on the basis of the location of the destroyed property in its relation to the size of the area of land owned or held by lease by plaintiff.

The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. The law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest. Shepard v. Shepard, 145 Neb. 12, 15 N. W. 2d 195.

What, then, was the intention of the parties as manifested by the terms of the contract? The premises leased were to be used for the purpose of an alfalfa dehydrating plant. The buildings constructed on the leased premises and on the property adjoining were consistent with and for that purpose. They comprised one unit making up the dehydrating plant. The alfalfa hay within and without the hay warehouse was there in connection with that occupation and use of the premises. The personal property within the hay warehouse, other than hay, was also there consistent with that use of the premises. There is no ambiguity in the contract. While stated in general terms, it clearly appears that the intention of the contracting parties was that the plaintiff assumed all risk of the loss here involved. The liability or nonliability of the defendant railroad is not shown to be related to the area of land other than the leased premises owned or occupied by the plaintiff. We find the first contention to be without merit.

Plaintiff's next contention is that the question as to whether the property destroyed was in proximity to the leased premises when connected with or incidental to the occupation was a question of fact which should have been submitted to the jury.

The rule is: "* * * if a contract is to be construed by reference to its terms alone, and without calling in the aid of extrinsic facts and circumstances, it is the duty of the court to interpret it. But if the construction must depend upon proof of other and extrinsic facts, then these questions of fact should be submitted to the jury, under proper instructions from the court." Coquillard v. Hovey, 23 Neb. 622, 37 N. W. 479, 8 Am. S. R. 134. See, also, Rosenthal v. Ogden, 50 Neb. 218, 69 N. W. 779; Meyer v. Shamp, 51 Neb. 424, 71 N. W. 57; Sabin v. Cameron, 90 Neb. 347, 133 N. W. 422.

Here all questions of fact were undisputed. There was no fact issue to submit to the jury. The effect of plaintiff's contention is that the jury be permitted to define

and then apply the words used. The rule is that ordinarily the meaning of words in common use is a question for the court. 13 C. J., Contracts, § 1000, p. 788; 17 C. J. S., Contracts, § 620, p. 1289.

As to the dismissal of the cause as to the defendant engineer the plaintiff suggests that the engineer was in charge of the train and that plaintiff had shown negligence on the part of the railroad in setting the fire and that accordingly a prima facie case of negligence was shown as to the engineer. Plaintiff makes no reference to any evidence in the record to sustain its contention above made or to show negligence as charged on the part of defendant engineer as required by rules 8 a 2 (6) and (7) of this court. We find no such evidence in the record. The contention is without merit.

The judgment of the trial court is affirmed.

AFFIRMED.