CLARENCE J. SMITH, APPELLANT, V. GAME, FORESTATION AND PARKS COMMISSION OF THE STATE OF NEBRASKA ET AL., APPELLEES.

103 N. W. 2d 829

Filed June 14, 1960.   No. 34759.

Crites & Shaffer and Stubbs & Metz, for appellant.

Clarence S. Beck, Attorney General, and Homer G. Hamilton, for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

Clarence J. Smith brought this action in the district

court for Sheridan County against the Game, Foresta-
tion and Parks Commission of the State of Nebraska
and two of its employees. We shall hereinafter refer
to the Game, Forestation and Parks Commission of the
State of Nebraska as the commission. All of the lands
involved in this litigation lie in Township 28 North,
Range 44 West of the 6th P.M., in Sheridan County,
so for convenience we will herein refer to such lands
by section numbers only unless we refer to the town-
ship as a whole when we will refer to it as Township 28.

Smith alleged he is the owner of 160 acres of hay
land located on the south half of the southwest quarter
of Section 22 and the north half of the northwest quar-
ter of Section 27; that in the years 1947 and 1948, the
commission, in the name of the State of Nebraska, had
acquired title to lands in Sections 15, 16, and 22; that
in 1949 the commission caused two structures, one a
dam and the other a spillway, to be constructed in the
northwest quarter of the northeast quarter of Section
16, which dam and spillway obstruct the natural flow
of water from Molly Bourne Swamp into Pine Creek;
that the dam and spillway caused the water flowing in
this natural drainage basin to back up and form a lake,
which backing up caused the water level under his
hay land to rise to the extent that the land became
marshy and swampy; that the raising of the water level
killed the desirable tame or domestic grasses growing
in his hay meadow and caused rushes, water grasses,
and swamp grasses to grow therein, which are of little
value for hay; and that the flooding of his hay meadow
makes the harvesting of his hay crop more difficult and
expensive. He then states he has no adequate remedy
at law and asks that the court enjoin the commission
from interfering with the natural flow of water from his
hay meadow through drainage ditches and laterals there-
to, provided for that purpose, and to require the commis-
sion to remove sufficient of the obstructions it has
placed therein which are causing the conditions of which

he complains. That is, he wants the lake sufficiently lowered so the drainage from his hay land can flow into it, as it formerly did, without being backed up in the laterals and drainage ditch provided for that purpose.

Two hearings were had, the first on February 28, 1956, and the second on February 19, 1958. On the occasion of both hearings the trial judge viewed the premises. On September 8, 1958, the court rendered a decision in favor of the defendants; dissolved a restraining order, which had been granted plaintiff; and dismissed the action at plaintiff's costs. Plaintiff thereupon filed a motion for new trial and this appeal was taken from the overruling thereof.

The evidence shows there has always been a drainage basin, draining from south to north, through certain lands located in Township 28. As this drainage area passed north through Sections 27, 22, 15, and 16, it was not very wide and formed a low, swampy area with no natural stream flowing through it. Ultimately this drainage formed a lake in the northeast quarter of Section 16. This lake, which was some 20 to 25 acres in area, was known as "Molly Bourne Lake." The drainage out of this lake, which was to the north, was apparently the beginning of Pine Creek.

About 1916 a drainage ditch was built through this drainage basin in Township 28 for a considerable distance south from Molly Bourne Lake. Laterals to the main drainage ditch were then constructed across the swampy areas of the basin and it became good hay land. This drainage ditch is east of appellant's hay land but adjacent thereto. The drainage of appellant's hay land is from south to north and from west to east. There is a fall of from 2 to 3 feet in both directions. There are two east-west laterals across this hay land which empty into the north-south drainage ditch.

Appellant, who is a rancher, acquired about a 1,600-acre ranch in 1938 of which this hay land is a part. The balance of the ranch, consisting of range land, lies to the

south and east of Section 16 but is contiguous to the hay land. About 140 of the 160 acres of the land described as being in Sections 22 and 27 are hay land.

Sometime prior to July 30, 1947, the commission, in the name of the State of Nebraska, acquired title to certain lands in Sections 15, 16, and 22, either by gift or otherwise. Part thereof was given to the commission by James M. Smith, appellant's uncle. The commission decided to create a lake on these lands in order to establish public recreation grounds for hunting and fishing. Sometime prior to July 30, 1947, the commission sent one of its employees, Leon J. Cunningham, to see appellant for the purpose of obtaining from him a release of all damages that might be caused to his lands by reason of the commission creating a lake for fishing on its lands. As a result of Cunningham's visit the appellant did, on July 30, 1947, voluntarily sign the following agreement:

"THIS AGREEMENT, made and entered into this 30th day of July, 1947, by and between Clarence J. Smith and the Game, Forestation and Parks Commission of the State of Nebraska,

"WHEREAS, the said Game, Forestation and Parks Commission proposes to improve and stabilize a certain lake located in Sections 16 and 22, Township 28 North, Range 44 West, 6th P. M., Sheridan county, Nebraska.

"NOW, in consideration of the advantages which said improvements will be to said grantor and to his property, Clarence J. Smith hereby releases the State of Nebraska from all damages which may in any way be sustained by reason of said improvement and hereby grants to the State and public privileges of ingress and egress in order that it may have access to the adjacent shore of the lake.

"It is understood and agreed that suitable fences shall be built and maintained by the State."

In 1949, the commission, with full knowledge of the appellant who took no action to prevent it, caused a dam and spillway to be built in the northeast part of

Section 16 just to the north of the area known as Molly Bourne Lake and in the two drainage outlets therefrom. These structures caused a lake to form, mostly to the south and east thereof, which covers an area of between 200 and 240 acres. It was named "Smith Lake," apparently to honor the man who had given part of the land to the state upon which it is located. The height of the water in the lake is regulated by a control tower located in the lake in front of the dam and is normally kept at a depth of from 9 to 10 feet over at least one-fourth of the lake's area. This is necessary in order to keep the fish, with which the lake has been stocked, from being winter killed. It has been kept at a minimum depth for this purpose. In addition to having the lake stocked with game fish the commission has planted between ten and fifteen thousand trees of various kinds in the area of the lake; it has caused a hard surfaced road to be built from the highway to the lake; has built fences; and has done other things to make the area a recreational place to which the public may come free of charge and where they can fish and hunt. To do this the commission has spent between $27,000 and $35,000.

The dam is about 2 miles north of appellant's hay land. The lake created by the dam extends down into Section 22, but does not extend onto the hay land of appellant located therein, the extreme south end of the lake being some 400 feet north of the hay land. It does, however, cause the water in the drainage ditch to the east of appellant's hay land, and in the laterals across it, to back up and drain less freely. As a result the water table under appellant's hay land has been caused to rise considerably, which has resulted in damage to some 60 acres thereof. This damage consists primarily of killing the tame or domestic grasses growing thereon, which are desirable for hay, and causing swamp grasses to grow in their place, which grasses have little, if any, value as hay. In addition, the wet condition of the

soil, caused by the backing up of the water, at times causes it to be difficult and more expensive to harvest the hay that is growing thereon and, at times, makes it impossible to do so. No claim is made by appellant in this action for these damages.

We come then to the meaning of the agreement the parties entered into for thereby appellant agreed to release the state from all damages which he might sustain by reason of the commission improving and stabilizing a certain lake located in Section 16.

In O-N-L Mills, Inc. v. Union Pacific R. R. Co., 151 Neb. 692, 39 N. W. 2d 501, we said: "The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles." And in Peetz v. Masek Auto Supply Co., 161 Neb. 588, 74 N. W. 2d 474, we said: "In construing a writing it is the duty of the court to give to words used their ordinary and popularly accepted meaning in the absence of explanation or qualification."

"In the interpretation of a writing which is intended to state the entire agreement, preliminary negotiations between the parties may be considered in order to determine their meaning and intention, but not to vary or contradict the plain terms of the instrument." O. C. Hirsch Constr. Co. v. Peterson, 167 Neb. 295, 92 N. W. 2d 694.

Both parties offered parol evidence of what the preliminary negotiations between the parties had been which lead up to the execution of the agreement in order to show the meaning of the language used. The evidence in this respect is in irreconcilable conflict. In view thereof the following has application: "While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an

irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." Johnson v. Erickson, 110 Neb. 511, 194 N. W. 670. See, also, Worm v. Crowell, 165 Neb. 713, 87 N. W. 2d 384.

In this respect the evidence shows that sometime prior to July 30, 1947, probably in June, Leon J. Cunningham, then an employee of the commission, went out to appellant's ranch home; that he found appellant at home and there discussed with him the commission's desire to improve the land it owned north of his land, a part of which appellant's uncle had given the commission in the name of the State; that he told appellant the commission was going to create a lake thereon so the public could use it for fishing and recreational purposes; that the commission would construct a dam for that purpose in order to raise the level of the water to as great a height as possible so the depth of the lake would be sufficient for stocking fish; and that he told appellant the water might back up enough to get onto one or two low spots located northwest of his house. It thus becomes clear that appellant knew what the commission meant by the words of the agreement to the effect that it would "improve and stabilize a certain lake." Under this situation we do not think appellant is now in a position to complain of what the commission did, which is exactly what Cunningham told appellant the commission intended to do in order to improve the lake thereon to make it available to the public for fishing and recreation. The improvements made are such that the commission can stabilize it for that purpose. To grant appellant the relief he asks would, for all practical purposes, destroy what the commission has done. Under the circumstances here disclosed we do not think a court of equity should do so.

We affirm the judgment of the lower court. All costs of this appeal are taxed to appellant.

AFFIRMED.