OTTO A. FRENTZEL, TRUSTEE, APPELLEE, V. ANNA SIEBRANDT, APPELLEE, IMPLEADED WITH LEOTA B. LEMKE ET AL., APPELLANTS.

73 N. W. 2d 652

Filed December 23, 1955. No. 33804.

*Sidner, Lee, Gunderson & Svoboda,* for appellants.

*Moodie & Burke* and *Hugo M. Nicholson,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Otto A. Frentzel, as trustee of an express trust, sought instruction of the district court concerning distribution of property acquired and held by him for four beneficiaries by virtue of a written instrument executed by them, for a determination by the court that the accounts of the trustee were correct, and for any other proceedings necessary to finally dispose of the trust.

The situation making the action of the trustee appropriate resulted from the following circumstances: Nels P. Hansen, a resident of Cuming County, died December 1, 1935. His heirs were Karen Christina Hansen, his widow; and Anna Siebrandt, Louis J. Hansen, and Cecelia Benzien, his children. The estate of the deceased was administered in the county court of Cuming County. The heirs of the deceased executed an instrument in writing dated January 8, 1936, which recites that the heirs, the only parties in interest, made a settlement of a controversy involving the probate of a document purporting to be the will of the deceased to which objections were filed. The terms of the settlement were as follows: The real estate owned by the deceased should descend and vest as provided by the intestate laws of the state and all personal property remaining after administration of the estate of the deceased was completed should be distributed to Otto A. Frentzel as trustee to hold, collect, invest, and reinvest except the income and accumulations of the trust property should be paid annually or more frequently if possible to Karen Christina Hansen during her lifetime and at her death the trust should terminate and the trustee should distribute all the trust property equally to the children of Nels P. Hansen, deceased. The widow and children of

the deceased by the instrument assigned and transferred the personal property referred to above to the trustee. Otto A. Frentzel accepted the appointment and has been the trustee of the trust created by the instrument since the date thereof.

The beneficiaries of the trust executed an instrument in writing dated September 22, 1937, by the terms of which they authorized the trustee, when opportunity existed, to purchase with funds of the trust for it 120 acres of land in Cuming County by an expenditure of not to exceed $12,000. The instrument contained the further provisions that the real estate if acquired by the trustee should be held by him during the term of the trust and the net income therefrom should be disposed of as provided by the agreement creating the trust and that at the termination of the trust the real estate should be conveyed by the trustee to Cecelia Benzien, free of encumbrance, at a value of $12,000 "to apply in such amount upon the value of her beneficial interest in said trust and to be valued at such amount in the settlement of said trust." If the value of her interest therein was less than said sum she should pay to the trustee upon demand as a condition of receiving a conveyance of the land such amount as was required to equalize the shares in the trust of all the beneficiaries.

The beneficiaries of the trust executed an instrument in writing dated November 26, 1937, by the terms of which they authorized the trustee, when opportunity existed, to purchase with funds of the trust for it a quarter section of land in Cedar County by an expenditure not to exceed $11,250. This instrument contained provisions identical in effect to the one dated September 22, 1937, described above except the conveyance of the land by the trustee at the termination of the trust was required to be made to Louie J. Hansen at a valuation of $11,250.

Cecelia Benzien by an assignment in writing dated April 22, 1944, transferred all her interest in the trust

property to her children, Leota B. Lemke, Dolores L. Lemke, and Faye Y. Benzien who is named in this cause as Faye Y. Froehlich. Cecelia Benzien died on June 17, 1944. Louis J. Hansen died intestate on October 18, 1947, a resident of Cedar County and his estate was administered in the county court of that county. His heirs are his children, Leland M. Hansen, Ardis Hastings, Harold L. Hansen, Ivan L. Hansen, Raymond Hansen, Kenneth Hansen, Delma Erlenbusch, and Alice Halthus. Karen Christina Hansen, the widow of the deceased, died October 9, 1952. Her heirs are the appellants and the appellee, Anna Siebrandt.

The death of Karen Christina Hansen terminated the trust. There was a lack of harmony among Anna Siebrandt and the other beneficiaries of the trust as to the disposition and distribution of a part of the trust property and because thereof the trustee appropriately sought the direction and instruction of the court by the institution of the proceedings of which this appeal is a part.

The adjudication made by the trial court was as follows: That the acts and accounts of the trustee to March 23, 1954, were correct; that he account for his acts, receipts, and disbursements thereafter and jurisdiction was retained to hear and determine the correctness thereof; that the trustee should pay two items of expense for repairs made on the Cedar County land; that the indebtedness of Anna Siebrandt should be charged to and deducted from her distributive share of the trust property when distribution was made of the trust assets; that the Cedar County land, the east half of the southwest quarter and the west half of the southeast quarter, Section 16, Township 29 North, Range 3 East of the 6th P. M., should be conveyed by the trustee to the eight heirs of Louis J. Hansen, deceased, above named and described, at a value of $24,000 (instead of $11,250 as stated in the contract) to be charged against their distributive share of the trust property at that amount and any difference between it and the value of their dis-

tributive share was required to be paid by them to the trustee as a condition precedent to their receiving a conveyance of the land from the trustee; that the Cuming County land, the south half of the southeast quarter of Section 25 and the northeast quarter of the northeast quarter of Section 36, Township 24 North, Range 4 East of the 6th P. M., should be conveyed by the trustee to the children and assignees of Cecelia Benzien, above named and described, at a value of $31,500 (instead of $12,000 as stated in the contract) subject to the same provisions and conditions as were made in reference to the conveyance of the Cedar County land to the heirs of Louis J. Hansen, deceased, as above detailed; that if any amount required to be paid as a condition precedent to a conveyance of real estate by any person or group of persons was not satisfied within 6 months from the time the amount thereof was determined by the trustee, the real estate was required to be sold by him and the sale reported to the court for confirmation and distribution of the proceeds of the sale to the persons entitled thereto; and that the costs accrued in the cause should be paid by the trustee from funds of the trust and charged by him one-half to the assignees of Cecelia Benzien and one-half to the heirs of Louis J. Hansen, deceased. This appeal is from that judgment.

The appellee, Otto A. Frentzel, will be hereafter called the trustee, Anna Siebrandt will be spoken of as appellee, and the assignees and children of Cecelia Benzien and the heirs of Louis J. Hansen will be referred to as appellants. The true name of the son of Nels P. Hansen was Louie J. Hansen and he was the identical person sometimes named in this cause as Louis J. Hansen.

The substantial issue in this cause concerns the disposition to be made by the trustee of the land purchased by him by authority of the instruments dated September 22, 1937, and November 26, 1937. Appellee thinks they do not express the intention and agreement of the parties who executed them. She concedes that they were made

by the heirs of her father in the form and contents as they appear in the record; that there were negotiations between them and the trustee in the year 1937 concerning the purchase of real estate by the trustee by the use of funds of the trust as proposed and desired by her brother and her sister; that it was agreed by the heirs of Nels P. Hansen, deceased, that the trustee should be authorized to purchase the 120 acres of Cuming County land for not to exceed $12,000 and the 160 acres of Cedar County land for not to exceed $11,250; that the land should be retained during the term of the trust and the income therefrom paid to the widow of the deceased during that time; and that it was the intention and agreement of the persons who signed the instruments that upon the death of Karen Christina Hansen the Cuming County land should be conveyed by the trustee to Cecelia Benzien at a valuation of not less than $12,-000, the cost thereof, and the Cedar County land should be conveyed to Louie J. Hansen at a valuation of not less than $11,250, the cost thereof. But she pleads in this cause that in the negotiations had no thought or consideration was given to the possibility that the land might appreciate in value during the term of the trust and that there was no meeting of the minds or agreement in respect thereto by the parties; that the instruments made by the parties above referred to are ambiguous and do not express the agreement of the parties who made them; that it was not intended that regardless of the value of the lands at the end of the trust they should be conveyed to Cecelia Benzien and Louie J. Hansen at the cost of the lands; that she signed the instruments but would not have done so if she had then had any reason to believe that the distribution of the trust estate would be otherwise than equal as originally agreed by the heirs of the deceased; that the instruments by virtue of which the lands were purchased should "be reformed to reflect the agreements of the parties thereto"; and that the lands should be ordered conveyed one-third

to appellee, one-third to assignees of Cecelia Benzien, and one-third to the heirs of Louie J. Hansen, deceased, or that they should be sold and the proceeds distributed in those proportions.

The attempt of appellee to establish a basis for reformation of the instruments by virtue of which the land was purchased by the trustee is that she only attended school to the 4th grade; that nothing was said in the negotiations and conversations concerning the purchase of land by the trustee about the possibility that the land might increase in value before the death of her mother; that she did not think of anything like that; that she would not have signed the instruments if it had occurred to her that the valuation of the land would double before the trust was closed; and that nothing was said about appreciation in value of the land but it was discussed that Cecelia Benzien and Louie J. Hansen were to take the land for the purchase price in any event when the trust ended without regard to how much it had depreciated in value.

The trust property at the time the trust was created was the personal property available for distribution when the administration of the estate of Nels P. Hansen was completed. It was owned by his heirs. The property was made a trust. It was created entirely by the agreement of the widow and children of the deceased who were competent and the individual owners of the trust property. The trust was created and existed by agreement and it could be modified by the same method. Investment could be made in whatever property and upon whatever terms the parties who were the owners stipulated. It was because of the agreements of the owners made subsequent to the creation of the trust that the trustee invested in land upon the terms prescribed by the beneficiaries of the trust by their written instruments. The record indicates that these originated in a very natural manner. The son of the deceased, a recent widower with eight children, wanted a farm to

live on with his family which would at the end of the trust become his farm. The youngest child of the deceased wanted land also. These two heirs were willing to hazard the interest they had in the assets of the trust that land would prove a safe investment and they consented to take the land at what it cost the trust in any event at the end of the trust. Appellee asserts that the parties intended to provide that in no event should Louie J. Hansen and Cecelia Benzien take title to the land for less than it cost the trust. This is precisely what the instruments entered into incident to the purchase of the land provide and it is what they are willing to do and contend that they are entitled to do.

There is no evidence of fraud, mistake, misrepresentation, or that any of the interested parties intended or attempted to secure an advantage over appellee whose intrinsic intelligence is not in dispute. She executed the writing whereby she and others assigned the property to a trustee for investment and management and there is no claim that she did not comprehend its meaning, effect, and purpose. It is reasonable to believe that she could and did understand the rather simple, definite, and unequivocal language in the agreements for the purchase of the farms. Her examination and testimony in this case indicate she is not an unintelligent person. These instruments had been in effect for 15 years at the time the trust terminated. There is evidence to justify a belief that appellee knew during this time that the lands were to go to her brother and sister at the conclusion of the trust in accordance with the terms of the instruments. Appellee on a number of occasions objected to the trustee spending anything for the betterment of the farms because that decreased the amount which would be available for distribution when the trust ended and would improve the farms for those who were to receive them. The facts and circumstances at the time the instruments were made, September 22, 1937, and November 26, 1937, their clear, complete, and un-

equivocal terms, and the absence of evidence that they do not express the agreement of the parties foreclose any basis for the reformation of the instruments. The burden upon this phase of the case was upon appellee. She has failed to sustain it. In Kear v. Hausmann, 152 Neb. 512, 41 N. W. 2d 850, it is said: "A preponderance of evidence sufficient to justify reformation of a written instrument requires proof that is clear, convincing, and satisfactory." The law presumes that the parties understood the import of their contracts and that they had the intention which their terms manifest. Shepard v. Shepard, 145 Neb. 12, 15 N. W. 2d 195; O-N-L Mills, Inc. v. Union Pacific R. R. Co., 151 Neb. 692, 39 N. W. 2d 501.

The argument and conclusions of appellee proceed from a misconception of the language of the instruments authorizing the purchase of the land by the trustee and providing for the disposition of it at the termination of the trust. This is indicated by her statement that the agreements contain specific provisions to apply in the event land decreased in value and they contain no provisions if land increased in value. The instruments evidencing the agreements of the parties contain no provision, specific or otherwise, which should apply and govern in the event the land decreased or increased in value. The precise and clear language is that at the conclusion of the trust the trustee was in any event authorized and obligated to convey the lands on the respective cost valuations, $12,000 as to Cecelia Benzien and $11,250 as to Louie J. Hansen. The language in this regard in the instrument concerning the Cuming County land is: "That upon the termination of said trust the above described premises shall be conveyed by said trustee to the above named Cecelia Benzien, free and clear of encumbrance, at the valuation of twelve thousand dollars ($12,000.00), to apply in such amount upon the value of her beneficial interest in said trust *and to be valued at such amount in the settlement of said trust*. In the event the beneficial interest of said Cecelia

Benzien is of the value of less than twelve thousand dollars ($12,000.00), she shall pay to said trustee upon demand and as a condition precedent to receiving such conveyance, such amount as is necessary to equalize the shares in said trust of all of said beneficiaries." (Emphasis supplied.) The instrument concerning the Cedar County land is in this respect identical in language except as to the name of the grantee, the valuation, the land involved, and the personal pronoun "he" in place of "she." The language quoted makes it obvious and definite that regardless of whether the land at the termination of the trust was of the same value as when it was bought or was higher or lower in value than the cost was wholly immaterial. The instruments made everything definite and certain as to the conveyance of the land. It was to be conveyed upon the termination of the trust by the trustee to a named person at the valuation of a stated number of dollars and the land was "to be valued at such amount in the settlement of said trust." This was a definite arrangement that in the final settlement the named grantees would get the land and the trustee would realize from them the exact amount the land cost the trust when it was purchased. Any increase or decrease in the value of the land was foreign to the transaction and the necessary understanding of the unequivocal language of the instruments. The only thing in the final settlement required of the grantees was that they pay to the trustee any amount necessary to equalize distribution.

The appellee adopts and repeats in the discussion of the case a statement from a memorandum of the trial court to the effect that Mrs. Siebrandt's adversaries do not precisely say whether they claim she intended to sell, donate, or forfeit her share of any profit that might result. An examination and consideration of the writing creating the trust, the instruments concerning the purchase and ultimate disposition of the land, and the facts and circumstances existing at the time they were

made fail to find any mention or reference to profit or loss affecting any person concerned or the slightest indication that anyone concerned in or affected by the matter of the purchase and disposition of the land intended that appellee should have any "share of any profit that might result." The plain, unambiguous language of the instruments she executed condemns this argument and speculation.

It is stressed by appellee that the original trust agreement required an equal distribution to the beneficiaries of the trust property at the conclusion of the trust and that if the instruments authorizing the purchase and distribution of land by the trustee provided for unequal distribution to the beneficiaries that would be in conflict with the original agreement. The instruments concerning the land purchased by the trustee do not require an unequal distribution of trust assets. These authorized the purchase of land and fixed the control and disposition of the land bought. They required the trust to realize the amount the trustee paid for the land. This amount will, of course, be a trust asset and will be distributed as the original trust contract provides. The discussion concerning inequality results only because of the unjustified assumption that the instruments do not mean what they plainly express and that appellee should enjoy the advantage of the alleged increased value of the land.

The argument made in this regard implies that the original trust agreement is sacrosanct and that its provisions could not be changed or modified even though all the parties concerned were competent to make a contract providing for changes in it. This is not a sound conclusion. 89 C. J. S., Trusts, § 87, p. 895, states: "Persons free to contract may grant trustees the power to extend the trust in any manner and under any conditions."

In Morris v. Broadview, Inc., 328 Ill. App. 267, 65 N. E. 2d 605, the court said: "It is true, as contended by

plaintiff, that courts of equity will not permit trustees to extend without authority the life of a trust. But neither reason nor authority has been advanced for denying the right of persons free to contract to grant to trustees the power to extend the trust in whatever manner and upon whatever conditions the creators of the trust may designate."

In Washington Loan & Trust Co. v. Colby, 108 F. 2d 743, the United States Court of Appeals for the District of Columbia stated the ruling as follows: "A sole beneficiary, or several or successive beneficiaries all of whom consent and none of whom suffer from disability, may direct that the performance of a trust be arrested, modified, or even extinguished. * * * The beneficiaries of a trust who suffer from no disability and who have full knowledge of the facts and of their legal rights, may direct the trustee in the investment of trust funds, and if losses are sustained, beneficiaries cannot complain."

An argument is made that the pleadings of appellants admit that the parties merely intended to protect appellee against loss if the land decreased in value and the word "loss" as used in the pleading comprehended her share of any profit resulting from the land becoming of a greater value than the cost of it when purchased by the trustee. The part of the pleading relied upon is a portion of a sentence of an extensive paragraph. It states that all the parties agreed to the purchase of the lands "except that Anna Siebrandt required that in the event of the purchase of land that the other parties, Louie J. Hansen and Cecelia Benzien, should take over said land at the conclusion of the trust period at the amount invested in said land so that there would be no risk of loss to the said Anna Siebrandt." It is said that this is a judicial admission, a limitation of the issues, and makes the fact indisputable that Anna Siebrandt was insulated against loss. This contention is an extravagant play on the word "loss." If appellee required that her brother and sister should take the land at the

end of the trust at the amount invested in it, as the pleading of appellee alleges, she cannot now convincingly claim that it was intended they must accept the land at a higher price or pay her something additional because the land at the end of the trust was worth more than the cost price at which she insisted they take the land when the contract was made. Logically that is a perfect example of non sequitur. The paragraph of the pleadings from which the part of a sentence was selected states one proposition. It may not be fragmentized and a part of a sentence made to say something not intended by the pleader and which by reasonable understanding he has not said. In McCaskill v. Walker, 147 N. C. 195, 61 S. E. 46, it is said: "While it is not always easy to draw the line by which portions of a pleading may be separated from other portions and introduced, we think it clear that, where there is but one proposition stated, it should not be separated so that the pleader is made to say something which he never intended, and which by reasonable construction he has not said." See, also, 31 C. J. S., Evidence, § 301, p. 1072. The only admission that can legitimately be exacted from the language used by appellants in the paragraph referred to is precisely that the full amount of the trust funds invested in the land would be accounted for in the same amount in the final computation for distribution without diminution because of the investment.

The instruments of September 22, 1937, and November 26, 1937, are clear, complete, and unambiguous. They do not require construction or interpretation. The intention of the parties who made them and their effect must be found and deduced from their contents. Mason v. Mason, 156 Neb. 478, 56 N. W. 2d 614, states: "A written contract which is couched in clear and unambiguous language is not subject to a construction other and different from that which flows from the language used." See, also, Platte Valley P. P. & I. Dist. v. Cover, 155 Neb. 479, 52 N. W. 2d 243; Smith v. United States Fidelity

& Guaranty Co., 142 Neb. 321, 6 N. W. 2d 81; Hompes v. Goodrich Co., 137 Neb. 84, 288 N. W. 367.

The judgment of the district court rendered and entered in this cause on January 20, 1955, as stated and contained in paragraphs numbered and identified as I, II, III, VI, and· VIII thereof should be and it is affirmed. The judgment described above as stated and contained in paragraphs numbered and identified as IV, V, VII, and IX thereof should be and it is reversed with directions to the district court for Cuming County to render and enter a judgment in this cause as follows:

1. Instructing and directing the trustee, in the disposition and distribution of the assets of the trust, to convey the east half of the southwest quarter and the west half of the southeast quarter of Section 16, Township 29 North, Range 3 East of the 6th P. M., in Cedar County, Nebraska, to Leland M. Hansen, Ardis Hastings, Harold L. Hansen, Ivan L. Hansen, Raymond Hansen, Kenneth Hansen, Delma Erlenbusch, and Alice Halthus, free and clear of encumbrance, at the valuation of $11,250 to apply in that amount upon the value of their beneficial interest in the trust property of the trust involved in this case and represented by the trustee upon payment by them to the trustee, upon his demand, any amount that he determines to be the difference, if any, between the said amount of $11,250 and the value of said beneficial interest of the grantees to be named in the deed and adjudging that said valuation of $11,250 is the amount of the value of said land to be used in arriving at the value of the assets of the trust for distribution and in the settlement of the trust.

2. Instructing and directing the trustee, in the disposition and distribution of the assets of the trust, to convey the south half of the southeast quarter of Section 25 and the northeast quarter of the northeast quarter of Section 36, Township 24 North, Range 4 East of the 6th P. M., in Cuming County, Nebraska, to Leota B. Lemke, Dolores M. Lemke, and Faye Y. Froehlich, free

and clear of encumbrance, at the valuation of $12,000 to apply in that amount upon the value of their beneficial interest in the trust property of the trust involved in this case and represented by the trustee upon payment by them to the trustee, upon his demand, any amount that he determines to be the difference, if any, between the said amount of $12,000 and the value of said beneficial interest of the grantees to be named in the deed and adjudging that said valuation of $12,000 is the amount of the value of said land to be used in arriving at the value of the assets of the trust for distribution and in the settlement of the trust.

3. Taxing the costs of this proceeding in the district court and this court to the trustee and authorizing and directing him to pay the costs from the funds of the trust.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.