TRANSPORT INDEMNITY COMPANY, APPELLEE, v. JOHN SEIB, APPELLANT, IMPLEADED WITH JOHN SEIB, DOING BUSINESS AS SHIPPER'S MOTOR EXPRESS, ET AL., APPELLEES.

132 N. W. 2d 871

Filed February 5, 1965. No. 35787.

Nelson, Harding & Acklie, Charles J. Kimball, and Charles F. Noren, for appellant.

Perry & Perry, for appellee Transport Indemnity Co.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, and BROWER, JJ., and POLLOCK and SIDNER, District Judges.

WHITE, C. J.

This is an action for insurance premiums. From a jury verdict and judgment for the plaintiff in the sum of $6,639.46 John Seib, hereinafter referred to as defendant, appeals.

The defendant operated a fleet of trucks in various states. The plaintiff writes retrospective insurance. By the terms of the contract, exhibits 1 and 2, the defendant pays an advance premium based on a percentage of his gross monthly receipts. The insurance covers bodily injury, property and material damage, and cargo liability. As the losses are reported to the plaintiff, it processes and pays them. The defendant is given a quarterly report of his loss experience. The defendant pays all losses and expenses up to $1,000 and the plaintiff pays all over that sum. According to the formula agreed to by the parties, the earned premium is calculated retrospectively. The loss experience of other operators is not a factor. Each loss has added to it certain investigation, overhead, taxes, fees, and management costs, and the net sum is charged back against the defendant as earned premium. The sum, so computed on each loss, cannot be more than $1,000. The plaintiff pays the balance of the loss. If the advance premiums exceed the losses, the defendant gets a refund; if they are less, he is obligated to pay the balance as an earned premium. The object of the insurance is to give an operator the opportunity to take advantage of a good safety record in his insurance costs. The contract and policy may be canceled at any time by either party. The insurance went into force in April 1960 and was canceled on May 16, 1961.

To establish the amount of premium due, the plaintiff, whose home office is in Los Angeles, California, offered in evidence exhibit 14 which was received over objection as to foundation. Its admission is now assigned as prejudicial error.

The evidence supports the following summary of the nature of exhibit 14 and the foundation for its admission. Exhibit 14 is prepared and printed by electronic equipment. It was prepared by, and under the direction of, Leland S. Thomas, a director of the company, who is director of accounting for plaintiff, and whose testimony

is the foundation for the admission of exhibit 14. Records, such as exhibit 14, are under the custody and control of Thomas. A fair inference from the record is that the figures reported and the computations made are accurate calculations within his personal knowledge. On direct examination, this witness, Leland S. Thomas, testified: "Q. (BY MR. ACKLIE) Mr. Thomas, was Exhibit 14 computed, say, by an I.B.M. or other tabulating machine? A. Those calculations are prepared by machine, yes. They are all electric computers. We have our formulas set out, first, as to the type of policy this is. There are different plans of insurance which you can pursue, on all retrospective policies, so you have to have a formula in order to feed this particular information into the machine, and each time you have a case, we feed that formula into the machine, and the machine does the calculating work, whether multiplying or subtracting the premiums. It just does what used to be done by keeping books. We feed the formulas, and the machine will do that, and keep them on tape."

The information as to the losses is fed into the machine, the machine records them, makes the necessary formula calculations, and it is stored on tape. On four of the large pages of this exhibit is recorded each accident by date, name of driver, type of accident (coded), amount and type of loss, allocated expenses according to the policy contract, and other information from which the premium can be computed. The total of the paid losses chargeable as premiums for policy year is found on the first two pages of exhibit 14. There is recorded the amount of advance premiums paid. The individual loss records on the last four pages support the figures in the calculation of premiums owed and due on pages 1 and 2. On pages 1 and 2, the machine takes the composite totals of the losses allocated to premiums, subjects them to the formula of the contract (exhibits 1 and 2), computes the total premium owed for the year, deducts the payments made, and enters the total due. It is a book-

keeping record made in the usual course of business. It was sent quarterly to the insured, Seib, and it is a cumulative record. The information is stored on the tape and at any time the machine can retrieve a record such as exhibit 14 giving the losses paid to date and the premium paid and due according to the formula. Thomas testified that the calculations on exhibit 14 are made exactly in conformity with the defendant's premium formula in the contract. This witness, Thomas, made a detailed explanation of each item on exhibit 14. He took the entire list of claims shown on exhibit 14, computed the amounts charged and due according to the contract formula, and reconciled these figures with the machine-produced results on exhibit 14. This witness' testimony, mostly as to foundation for exhibit 14, stretches across 141 pages of this record. All of it cannot be summarized. It shows that this record and computation were made as the usual part of plaintiff's business operation, that the keeping of this record was an indispensable part of the business, and that the record was kept separate for the insurance contract of the defendant. This exhibit shows $39,828.50 paid claims for the policy year April 1, 1960, to April 1, 1961. After processing through the contract formula, it shows a total earned premium charge of $10,301.45, with payments of $3,046.18 by defendant as advance premiums and a payment of $2,069.03 on the deficit, leaving a balance due of $5,186.24. The same process applied to the year April 1, 1961, to April 1962, results in a net due the plaintiff of $1,453.22 or a total due of $6,639.46. This is the verdict the jury returned.

Section 25-12,109, R. R. S. 1943, is as follows: "A record of an act, condition, or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the

sources of information, method, and time of preparation were such as to justify its admission."

In construing this statute, our court said in Higgins v. Loup River Public Power Dist., 159 Neb. 549, 68 N. W. 2d 170, as follows: "The purpose of the act is to permit admission of *systematically entered records* without the necessity of *identifying, locating, and producing as witnesses the individuals who made entries in the records in the regular course of the business* rather than to make a fundamental change in the established principles of the shopbook exception to the hearsay rule." (Emphasis supplied.)

It seems to us that the foundation testimony here follows the statute and is directly in the scope of the purpose of the statute as stated in the Higgins case, *supra*. It was not necessary to produce and identify the witnesses who originally supplied the information as to losses that is recorded on the tape.

The defendant has failed to point out to us wherein the foundational requirements of this statute have not been met. Identification and the mode of its preparation, and that it was made in the regular course of business, were fully testified to. A complete and comprehensive explanation of its meaning and "identity" were given. As we see it, defendant's objections go only to the weight and credibility of exhibit 14 and not its admissibility. Exhibit 14 constitutes the accounts receivable record of the plaintiff as to defendant. It responds to the reports as to gross receipts and claims furnished by the defendant himself. It was fed into the electronic equipment, processed as to the formula agreed upon, all as a part of the usual and necessary business operations and record of the plaintiff company. The calculations were authenticated by the testimony of the witness, Thomas, which reconciled the figures of the original losses with the calculation of the final amount due. This procedure fits squarely that approved in United States v. Olivo, 278 F. 2d 415, wherein it was said: "The

witness testified to a well-established business procedure not only in the trade, but specifically in the very company which had prepared the document. All the hallmarks of authenticity surround this document, since it was made pursuant to established company procedures for the systematic, routine, timely making and preserving of company records."

No particular mode or form of record is required. The statute was intended to bring the realities of business and professional practice into the courtroom and the statute should not be interpreted narrowly to destroy its obvious usefulness. United States v. Olivo, *supra.*

The machine here performs the bookkeeping task in the usual course of business. Instead of on paper, the information and calculations are stored on tape, and may be retrieved and printed at any time. The taped record furnished a cumulative record based on information flowing into the office of the plaintiff company day by day and fed into the machine in response to a systematic procedure for processing each insured's account.

In the terms of the statute, we are of the opinion that the "sources of information, method, and time of preparation" were such as to justify its (exhibit 14) admission. To hold otherwise would require the production of the original claim files and reports, which in turn would probably be inadmissible under a strict application of the hearsay rule.

Defendant was sent a quarterly report in the same form as exhibit 14, and prepared from the same tape, showing his loss experience and expense, and the calculation of his premium due. During the period of his business with plaintiff he did not question the accuracy of this record. Exhibit 14 is merely cumulative of these quarterly reports. The original sources came from the defendant himself. The amounts and the character of the payments on the losses are not questioned. This situation bears on the authenticity and probative source of

the document and aids the conclusion that, "the sources of information, method, and time of preparation were such as to justify its admission." § 25-12,109, R. R. S. 1943.

Defendant argues exhibit 14 is inadmissible because it was prepared for use in this litigation and trial, citing Higgins v. Loup River Public Power Dist., *supra.*

This argument exalts the form over the substance. The retrieval from the taped record (exhibit 14) was made for the purposes of the trial. But, the taped record and the information and calculations thereon were made in the usual course of business and for the purpose of the business alone. There is no merit to this contention.

Defendant assigns as error the giving of instruction No. 4. In instruction No. 4, the court told the jury that in the construction of a contract it must be construed as a whole and "that the law presumes that the parties understood the import of their contracts and that they had the intention which the contract terms manifest." This is a well-settled and fundamental statement of the substantive law. See Frentzel v. Siebrandt, 161 Neb. 505, 73 N. W. 2d 652. It is simply an accurate abstract statement of the law to aid the jury in its determination of the meaning and scope of the contract. It did not declare any presumption of the existence of an ultimate fact, such as negligence, which would aid the burden of proof and might require the court to state that such a presumption is rebuttable. The cases cited in defendant's brief are to the latter effect and are not in point. The court used the word "presumes" but it was not used in the sense of creating a presumption of fact in favor of the plaintiff in meeting its burden of proof. The presumption referred to is properly limited by its language so as to not be misleading to the jury. There is no merit to this contention.

To conform to the proof, the trial court permitted the plaintiff, at the close of its case, to amend the prayer of its petition as to amount. This is assigned as error.

This is essentially an accounting case for premiums due. The proof as to the total amount due as premiums and the allowable credits varied from those alleged in the pleadings. But the cause of action was not changed nor was the theory of the plaintiff's case. At issue from the original pleadings were the amounts due from a series of transactions stretching over a period of about 2 years. The trial court is vested with a wide discretion in this matter in the furtherance of justice. The amendment here simply changed the amount prayed for to conform to the proof which was in the sum of $6,639.46. The amendment of the prayer, within the language of the applicable statute (section 25-852, R. R. S. 1943), "does not change substantially the claim or defense." This contention is without merit.

The assignments of error are not sustained. The judgment of the trial court is correct and is affirmed.

AFFIRMED.