**MISSOURI VALLEY WALNUT COMPA-
NY, Plaintiff-Respondent,**

v.

**Jim SNIDER and Tom Pannell,
Defendants-Appellants.**

**Nos. KCD 29043, KCD 29044.**

Missouri Court of Appeals,
Kansas City District.

July 3, 1978.

Motion for Rehearing and/or Transfer
Denied July 31, 1978.

Application to Transfer Denied
Sept. 12, 1978.

Morton, Reed & Counts, James H. Counts, Christi M. Insco, St. Joseph, for defendants-appellants.

Wendell E. Koerner, Jr., St. Joseph, for Tom Pannell.

Errol D. Taylor, St. Joseph, for plaintiff-respondent.

Before WELBORN, Special Judge, Presiding, PRITCHARD, J., and HIGGINS, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Action by Missouri Valley Walnut Company against Jim Snider and Tom Pannell for damages for breach of contract to deliver a quantity of walnut logs. Cross-claim by defendant Snider against codefendant Pannell for damages for breach of contract between them to fulfill their contract with plaintiff.

Appeal (29043) by defendant Snider from verdict and judgment of $15,186.63 in favor of plaintiff against defendants, combined with appeal (29044) by defendant Pannell from the verdict and judgment in favor of plaintiff, and from the verdict and judgment of $7,593.31, in favor of cross-claimant Snider against codefendant Pannell. The question common to both appeals is whether the court erred in admitting a computer print-out in support of plaintiff's damages. An additional question in Pannell's appeal is whether the court erred in giving verdict-directing instructions 7 and 8 on Snider's cross-claim. Affirmed.

Missouri Valley Walnut Company, located in St. Joseph, produces lumber, veneer, and gunstocks from walnut logs. Ozark Hardwoods, located in Springfield, produces lumber from walnut logs. Both companies were owned by C & D Sales Company. James Rowland was employed by Missouri Valley as a buyer of walnut logs, and had known Jim Snider and Tom Pannell since 1966. He had purchased logs from Mr. Snider since 1967, and from him and Mr. Pannell since 1972 when they started work-

ing together. Mr. Rowland's purchases on behalf of Missouri Valley would be shipped to Missouri Valley Walnut Company in St. Joseph or to Ozark Hardwoods in Springfield at the direction of Missouri Valley depending upon where logs were needed.

In September, 1972, Missouri Valley, through Mr. Rowland, contracted with Mr. Snider and Mr. Pannell, as partners, to purchase $45,000 worth of walnut logs at a price of $0.275 per board foot. The logs were held in a log yard on the Frisco Railroad at Walnut Grove, Missouri. The partners were to ship the logs and Missouri Valley was to scale them either before shipment or after arrival at Missouri Valley in St. Joseph or its sister company, Ozark Hardwoods, in Springfield, as designated by Mr. Rowland.

On September 29, 1972, Missouri Valley advanced the $45,000 to Mr. Snider and shipments began the following week. Shipments to Missouri Valley and Ozark Hardwoods, as directed, continued whenever railroad cars were available until sometime in December, 1972. At that time Mr. Rowland was notified that Mr. Snider and Mr. Pannell had terminated their partnership. Mr. Snider and Mr. Pannell agreed that Mr. Pannell would fulfill the remainder of their obligation to Missouri Valley, and Mr. Pannell paid Mr. Snider $18,000 for his interest in the remaining Walnut Grove logs. Mr. Rowland was notified that Mr. Pannell would continue to ship logs to fulfill the $45,000 contract.

After December, 1972, Missouri Valley continued to receive logs on the contract both at St. Joseph and Springfield until late spring, 1973, when shipments ceased. Mr. Rowland called Mr. Pannell about the remaining shipments due and was informed first that the railroad was not furnishing enough cars and, later, that he did not owe Missouri Valley any additional logs.

To establish the balance due on the contract, i. e., its damages, plaintiff offered in evidence Exhibit 2 which was received over defendants' objections as to foundation. Its admission is now assigned as error. In support, appellants assert that there was no testimony as to mode of preparation of the records that constituted the source of the information that went into preparation of the exhibit; that it was hearsay on hearsay; that it purported to show receipts at Ozark Hardwoods and there was no testimony of the method or time of preparation of records from Ozark Hardwoods; that no such records were produced in support of the print-out, and defendants were deprived of any opportunity to cross-examine or test the credibility of the sources.

Part of the agreement was that Mr. Rowland would scale the logs at Walnut Grove, or Mr. Snider and Mr. Pannell would ship them to one of Missouri Valley's plants and the man on the yard there would scale them. Such would continue until $45,000 worth of logs had been received by plaintiff. When logs were scaled at point of shipment or upon receipt, a tally was made which listed the number of logs and the amount of board feet they contained. Such tallies would go to the office in St. Joseph for the office manager to record. Neither Mr. Snider nor Mr. Pannell scaled logs. Their business was to load the logs.

Willard Baber is the office manager and chief bookkeeper of the logging division of Missouri Valley Walnut Company at its office in St. Joseph. He receives information daily from buyers in the field and from the log inspection stations where the company receives logs. He checks such information, codes it as necessary, and feeds it to a computer. The print-out is delivered from the computer the following morning and he checks its accuracy against the original information. Such records are business records of the company, and he is responsible for gathering the daily records, reviewing them, and feeding them to the computer. When records from field buyers and from the log inspection stations are received, he reviews same and feeds their information into the computer. Logs go through an inspection station when they are received by rail or truck. Log inspectors measure and grade the logs and send their information to his office the same as do buyers in the field. He checks inspectors' information against inbound car records and tallies

before sending it to the computer. The inbound car record book shows what railroad cars came into the plant with logs, and the point of origin.

The Walnut Grove transaction was given a buyer/producer/lot number, JO 9615. All records or transactions reference that account were credited or reflected in the company's records to that number at or near the time they were done or received by the office. Exhibit 2 was identified by Mr. Baber as the logging ledger for account JO 9615, maintained under his direct supervision and control. It showed monies paid by Missouri Valley for purchase of logs at Walnut Grove, number of logs actually received from Walnut Grove on the account, and where same were received. Such record was kept and maintained in the ordinary course of plaintiff's business.

Specifically, Exhibit 2 showed, with reference to the Walnut Grove transaction:

| | | | | |
|---|---|---|---|---|
| 9/30/72 | $45,000 advanced to Snider for walnut logs at Walnut Grove, and credits as follows: | | | |
| 10/07/72 | 93 wal. logs | 3448 ft. | SLSF | $   948.10 |
| 10/09/72 | 90 wal. logs | 3489 ft. | SLSF | 959.42 |
| 10/31/72 | 68 wal. logs | 4898 ft. | SLSF | 1,346.79 |
| 11/01/72 | 57 wal. logs | 3567 ft. | SLSF | 980.80 |
| 11/02/72 | 71 wal. logs | 4363 ft. | SLSF | 1,199.70 |
| 11/07/72 | 80 wal. logs | 2364 ft. | CBQ | 650.04 |
| 11/14/72 | 68 wal. logs | 4989 ft. | SLSF | 1,192.55 |
| 11/16/72 | 1 pcs. lbrflt | 72 ft. | FLITCHING | 21.60 |
| 11/17/72 | 756 wal. logs | 21025 ft. | OZARK HDWD. CO. | 5,782.01 |
| | 756 wal. logs | 21026 ft. | OZARK HDWD. CO. | 5,782.02 |
| 12/14/72 | 89 wal. logs | 3905 ft. | SLSF | 1,073.73 |
| 12/29/72 | 2 pcs. walnut | 32 ft. | CR. FROM FLT. PRICING | 18.08 |
| 1/25/73 | 356 wal. logs | 8939 ft. | OZARK HDWD. CO. | 2,458.23 |
| 1/31/73 | 1 pcs. walnut | 72 ft. | CR. FROM FLT. PRICING | 42.07 |
| 2/20/73 | 114 wal. logs | 4432 ft. | BN | 1,218.60 |
| 2/26/73 | 5 pcs. lbrflt | 182 ft. | FLITCHING | 48.67 |
| 3/15/73 | 2 pcs. walnut | 48 ft. | CR. FROM FLT. PRICING | 21.30 |
| 3/23/73 | 1 pcs. wal&bn | 25 ft. | CR. FROM FLT. PRICING | 18.77 |
| 4/16/73 | 202 wal. logs | 6057 ft. | OZARK HDWD. CO. | 1,665.68 |
| 5/08/73 | 1 pcs. rejven | 15 ft. | | 2.25 |
| 5/31/73 | 345 wal. logs | 7751 ft. | OZARK HDWD. CO. | 2,131.53 |
| 7/10/73 | 351 wal. logs | 8187 ft. | OZARK HDWD. CO. | 2,251.43 |
| | 3503 logs | 108886 ft. | | $29,813.37 |
| | | | BALANCE | $15,186.63 |

Mr. Baber, using Exhibit 2, stated that Missouri Valley received 3,503[1] logs containing 108,886 board feet which, at $0.275 per foot, had a value of $29,813.37, leaving $15,186.63 worth of logs still due and owing Missouri Valley.

Mr. Baber stated with respect to the accuracy of inspectors' records, that "inspectors are responsible individuals trained in their jobs." By experience, he can check the "reasonable" accuracy of inspectors' figures. The company scales and measures the logs when received at either of its plants (St. Joseph or Springfield), and credit against the advance payment is made on the scaling. Mr. Snider and Mr. Pannell confirmed the arrangements for scaling.

The Uniform Business Records Act, Section 490.680, RSMo. provides:

"A record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was

1. The random pieces shown as "Flitching" or "Cr. from Flt. Pricing" are the product of seven logs which produced veneer quality lumber.

made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The Act has been construed to render ineffective the objection that the record in question constitutes hearsay and that the preparer may not be present for cross-examination, *Tri-State Motor Transit Co. v. Navajo Freight*, 528 S.W.2d 475 (Mo. App.1975); that its requirements concerning sources of information and method and time of preparation vest in the trial court considerable discretion in passing upon admissibility of a document, and such discretion requires a determination whether the document has sufficient probative value to outweigh the opposing party's opportunity to test factual statements and conclusion by cross-examination, *Thomas v. Fred Weber Contractor, Inc.*, 498 S.W.2d 811 (Mo.App. 1973); that "regular course of business" means in the inherent nature of the business in question, and in the method systematically employed for the conduct of the business as a business, *Kitchen v. Wilson*, 335 S.W.2d 38 (Mo.1960); that no particular form is essential in determining the status and admissibility of an account record, and such record in which entries were made each day by plaintiff with knowledge of defendants is admissible, *Hancock v. Crouch*, 267 S.W.2d 36 (Mo.App.1954); that computer read-outs are admissible in action for unpaid bills, *Union Elec. Co. v. Mansion House Ctr. No. Redev. Co.*, 494 S.W.2d 309, 314–315[9] (Mo.1973).

The last case cites *Transport Indemnity Co. v. Seib*, 178 Neb. 253, 132 N.W.2d 871 (1965), which, in dealing with computer-stored information, stated: "The purpose of the act is to permit admission of systematically entered records without the necessity of identifying, locating, and producing as witnesses the individuals who made entries in the records in the regular course of the business * * *." 132 N.W.2d l.c. 874[1]. Relying upon the foregoing case, *King v. State ex rel. Murdock Acceptance Corp.*, 222 So.2d 393, 398[9] (Miss.1969), held "that print-out sheets of business records stored on electronic computing equipment are admissible in evidence if relevant and material, without the necessity of identifying, locating, and producing as witnesses the individuals who made the entries in the regular course of business if it is shown (1) that the electronic computing equipment is recognized as standard equipment, (2) the entries are made in the regular course of business at or reasonably near the time of the happening of the event recorded, and (3) the foundation testimony satisfies the court that the sources of information, method and time of preparation were such as to indicate its trustworthiness and justify its admission." See also Anno: Business Records— Electronic Computer, 11 ALR3d 1377, 1378.

Appellants do not question the quality of plaintiff's equipment. The testimony of Mr. Baber shows that the entries placed in the computer which resulted in the Exhibit 2 print-out were made in the regular course of business, at or near the time of the event recorded. The testimony of Mr. Rowland described the nature of plaintiff's business and its relationship to defendants. Mr. Baber described how and when the original entries occurred, whether at Missouri Valley in St. Joseph or at Ozark Hardwoods in Springfield, how and when he compiled, reviewed and fed them to the computer, and how and when he subsequently reviewed their accuracy. The circumstances of this case insulated the trial court from an abuse of discretion in the admission of Exhibit 2.[2] *Transport Indemnity Co. v. Seib*, supra, 178 Neb. 253, 132 N.W.2d l.c. 874–875.

The instructions in question follow:

### "INSTRUCTION NO. 7

"Your verdict must be for defendant, Jim Snider, on his claim against defendant, Tom Pannell, if you believe:

---

**2.** It should be noted also how the times and entries in Exhibit 2 track the events and sequence of the Walnut Grove transaction as related by witnesses Rowland, Snider, and Pannell.

"First, defendant Tom Pannell, agreed with Jim Snider that if Jim Snider would sell his interest in the logs at Walnut Grove, Missouri, to defendant Tom Pannell, then the defendant Tom Pannell would pay the defendant Jim Snider the sum of $18,000.00, and deliver the balance of the logs owing to the plaintiff, and

"Second, defendant Jim Snider did sell his interest in said logs to defendant Tom Pannell, and

"Third, defendant Tom Pannell failed to deliver the balance of the logs owing to plaintiff, and

"Fourth, defendant Jim Snider was thereby damaged."

### "INSTRUCTION NO. 8

"If you find the issues in favor of the Defendant Jim Snider on his claim for damages against Defendant Tom Pannell, then you must award the Defendant Jim Snider such sum as you believe will fairly and justly compensate him for any damages you believe he sustained as a direct result of the failure by Defendant Tom Pannell to deliver the balance of the Walnut logs owing to Plaintiff."

■ Appellant Pannell charges the court erred in giving the foregoing instructions on codefendant Snider's counterclaim. He asserts that the only cause of action pleaded and supported in the cross-claim is one of indemnity, and therefore the instructions submitting a breach of contract were erroneous, and instruction form submitting indemnity should have been used. He argues also that the manner of submission exposes him not only to the judgment in favor of plaintiff of $15,186.63 but the additional sum of $7,593.32 as well.

Defendant Snider's cross-claim pleaded that he and Mr. Pannell dissolved their partnership with respect to the Walnut Grove transaction, and as a part of the dissolution and for valuable consideration, Pannell assumed and agreed to fulfill the obligations which Pannell and Snider had entered into with Missouri Valley; that Pannell agreed and guaranteed Snider to ship the balance of logs due plaintiff; that

after demand was made on Snider by plaintiff for performance of the base contract, Snider made demands on Pannell to perform the contract between him and Pannell; that Pannell failed so to do; that Snider was damaged.

■ This theory was supported in the evidence and was submitted by Instructions 7 and 8. It may be that instructions on indemnity could have been modified and used as were MAI 26.01 and MAI 4.01, in lieu of specific MAI instructions to cover the issues between Snider and Pannell. However, the pleadings and evidence support the theory that Pannell contracted with Snider to do a specific act, and not merely to hold him harmless. Such a covenant is not indemnity alone, but is an affirmative contract, the breach of which gives rise to a cause of action of the nature here pleaded and submitted. See Rule 55.-32(f), V.A.M.R.

■ Mr. Pannell is not exposed to a total sum of $22,779.94 because the court, in entering judgment, limited execution on Snider's judgment for $7,593.31 against Pannell to issue "only in the event defendant Jim Snider satisfies the judgment heretofore entered on behalf of plaintiff in an amount in excess of * * * ($7,593.31); and upon the occurrence of such event Defendant Jim Snider shall be entitled to recover from Defendant Tom Pannell only those sums which he has satisfied in excess of * * * ($7,593.31)." Appellant Pannell registers no exception to the protection thus afforded.

Judgments affirmed.

All concur.