STATE OF NEBRASKA, APPELLEE, V. STEPHEN R. WARD, APPELLANT.

510 N.W.2d 320

Filed March 16, 1993.   No. A-91-1150.

Dennis R. Keefe, Lancaster County Public Defender, and ·Michael D. Gooch for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

SIEVERS, Chief Judge, and CONNOLLY and WRIGHT, Judges.

WRIGHT, Judge.

Stephen R. Ward was convicted of forgery in the second degree. On appeal, he argues that the State failed to prove forgery and that it was error to submit the case to the jury. He claims the court erred in admitting hearsay testimony, which violated his right to confront the witnesses.

## STANDARD OF REVIEW

An appellate court will disturb a jury's findings only when a preponderance of the evidence against such findings is great and they appear to be clearly wrong or when the findings are clearly contrary to the law. The court must sustain a jury's verdict if, taking the view most favorable to the State, there is evidence in the record to support it. *State v. Lewis*, 241 Neb. 334, 488 N.W.2d 518 (1992).

The admission of evidence is controlled by rule and not by judicial discretion, except where judicial discretion is a factor

involved in assessing admissibility. *State v. Timmerman*, 240 Neb. 74, 480 N.W.2d 411 (1992).

## FACTS

Ward was charged with second degree forgery, in violation of Neb. Rev. Stat. § 28-603(1) (Reissue 1989). The incident involved an attempt to obtain cash for a pink institutional slip, identified as No. 5190873, from the Department of Correctional Services (DCS). The pink "checks," as they are called, are DCS internal documents which authorize the DCS inmate accounting office to write a regular check on the requesting inmate's trust account, which is maintained at a bank. When an inmate has filled out the proper spaces on a pink check, it is presented for approval to the appropriate DCS personnel, who review it and determine if it has been issued for a proper purpose, and if so, the check is then sent through interoffice mail to inmate accounting.

When the check reaches accounting, it is subject to review by a DCS preauditing clerk. If the slip has been properly completed, the inmate's account is debited, and a trust account check for the authorized amount is drawn and issued.

On January 4, 1991, Ward attempted to cash a pink check for $240 at a DCS office. The check had several irregularities: It came from outside DCS; it contained a check number, which was normally not filled in until after the DCS accounting department had issued a trust check; the notation on the face of the check said it was for a Christmas gift, which was an unauthorized expenditure; and the signature block for approval of the expenditure was filled in with the name of a DCS employee, but the DCS security administrator testified that he did not believe the employee's signature was genuine.

Ward was convicted of second degree forgery, sentenced to probation for 18 months, and ordered to pay court costs within 1 year.

## ANALYSIS

Ward first argues that he cannot be convicted of forgery without proof of the forgery. Section 28-603 provides:

(1) Whoever, with intent to deceive or harm . . . utters any written instrument which is or purports to be, or

which is calculated to become or to represent if completed, a written instrument which does or may evidence, create, transfer, terminate, or otherwise affect a legal right, interest, obligation, or status, commits forgery in the second degree.

Neb. Rev. Stat. § 28-601(9) (Reissue 1989) defines "utter" as "to issue, authenticate, transfer, sell, transmit, present, use, pass, or deliver, or to attempt or cause such uttering." The elements of the crime of uttering a forged instrument are (1) the offering of a forged instrument with a representation by words or acts that it is true and genuine; (2) the knowledge that the same is false, forged, or counterfeited; and (3) the intent to defraud. *State v. Tate*, 222 Neb. 586, 385 N.W.2d 456 (1986).

The evidence showed that Ward presented a check which was not normally found outside DCS and which carried a staff person's signature which was not genuine. Ward's attempt to present the check to DCS in exchange for money was, by the very act, a representation that the check was true and genuine. Ward's knowledge that the same was false can be inferred from the circumstances surrounding his presentation of the check for payment.

David Satterfield, who was with Ward at the time he presented the check, testified that Ward obtained the check from "Little Ike" at the Lincoln Correctional Center (LCC). The notation on the check said it was for a Christmas present, but Satterfield stated that he and Ward knew it was not a Christmas present. Satterfield was to receive part of the money.

Satterfield stated that neither he nor Ward knew the payor on the check, Ike Connelly. They had never heard of Connelly until they saw the check. Satterfield heard Ward tell the DCS employee that he wished to have the money released to him. Ward and Satterfield had previously tried to cash the check at a Hy-Vee grocery store, where they were told to take the check to the DCS office.

John Shelton, a criminal investigator for the Nebraska State Patrol, testified that Ward told him the check was a Christmas gift from an inmate at LCC named "Ike Connelly." Shelton told Ward that Connelly was not an inmate and that the inmate number listed on the check had not been issued to an inmate

since 1982. Ward responded that he had received the check as a Christmas gift from Paul Conley. Shelton stated he did not know who Ward was referring to, but the person on the check was Ike Connelly. Ward then said, "Paul Conley is my attorney."

Ward was asked to identify Ike Connelly, and Ward said, "It was Conway who gave [him] the check." Ward then said he had received the check in the mail from inmate Connelly at LCC. He again changed his story and said that he had gotten the check from Conway, who was also an inmate.

Ward's contention that he did not commit the crime of forgery because the check was entirely completed before he received it does not take into consideration that "utter" also means to transmit, present, use, or deliver. See § 28-601(9). It was not necessary for the State to establish that Ward forged the document in order to convict him of forgery in the second degree. One who with the intent to deceive or harm utters any written instrument which is calculated to affect a legal right or interest commits forgery in the second degree.

Ward asserts the check was not a forged instrument because it did not and could not affect any legal right, interest, obligation, or status and was nothing more than a request to DCS to take action.

Velma Kotas, an accountant, testified that she was eating lunch at the DCS lunchroom when two men came into the nearby hallway and asked her for the accounting office. Ward, who had the pink institutional check in his hand, asked if he could receive money for it. Not only did he request money from DCS, but he had previously requested money for the check at a Hy-Vee grocery store. Ward's argument that the piece of paper did not and could not affect any legal right, interest, or obligation is without merit. Ward did attempt to use the check as an instrument to obtain money.

## HEARSAY OBJECTION

Ward also claims that the testimony of the DCS accounting manager, Inga Hookstra, concerning information obtained from a computer was hearsay and lacked proper foundation. The issue is whether her testimony is admissible under the

business records exception to hearsay, Neb. Rev. Stat. § 27-803(5) (Reissue 1989).

In *Transport Indemnity Co. v. Seib*, 178 Neb. 253, 132 N.W.2d 871 (1965), an insurance company sought to introduce its computer-produced records into evidence to show the premiums owed by the defendant. Seib objected on the basis that the records were not the best evidence. The court held the record admissible. "No particular mode or form of record is required. The statute was intended to bring the realities of business and professional practice into the courtroom and the statute should not be interpreted narrowly to destroy its obvious usefulness." *Id.* at 259, 132 N.W.2d at 875. The court noted that the purpose of the statute was to permit the admission of systematically entered records without the necessity of producing as witnesses the persons who made the entries in the records in the regular course of business. See *Higgins v. Loup River Public Power Dist.*, 159 Neb. 549, 68 N.W.2d 170 (1955).

Without objection, Hookstra testified that when an inmate is received into the system, he is assigned an identification number. The computer system then generates an institutional account for an inmate under that number, whether or not the inmate has any money in his account. By using the computer, Hookstra could determine whether a particular account number existed and whether an inmate with that number is in the system. She testified that she worked with this system on a regular, daily basis.

Ward then objected to any further testimony based on the computer records as being hearsay, lacking foundation, and violating his right of confrontation, because the person who originally entered the information into the computer was not present or subject to cross-examination. The court overruled the objection on the basis that the testimony qualified as a business records exception to the hearsay rule.

Over objection, Hookstra then testified that the account identified on the pink check was inactive. She accessed the correctional tracking system, which is a data base identifying every inmate who has been incarcerated since the inception of the system in 1977. She found that the number on the check had

been assigned to an inmate with the last name of Brown, who had been released in 1982. She stated that her duties with DCS required her to use this system on a regular basis, even though she had not been employed by DCS when the system was set up in 1977. When Hookstra used the correctional tracking system to find the name "Connelly," the last name of the inmate who had purportedly signed the check, she found an inmate named Connelly, but did not find an "I. Connelly," a "W. Connelly," or an "Ike W. Connelly." The Connelly she located had been released in 1985.

For admissibility under § 27-803(5), the business records exception, the activity recorded must regularly occur in the course of day-to-day business, it must have been made as a part of a regular business practice at or near the time of the event recorded, and it must be authenticated by a custodian or other qualified witness. *State v. Wright*, 231 Neb. 410, 436 N.W.2d 205 (1989); *Omaha World-Herald Co. v. Nielsen*, 220 Neb. 294, 369 N.W.2d 631 (1985).

The testimony of Hookstra from her observation of the computer records was hearsay. The question, then, is whether such testimony was a business records exception to the hearsay rule. The evidence established that the three requirements of *Wright* were met. If Hookstra had compiled the records herself, they would have been admissible as a business records exception. Instead, she testified as to the contents without producing a copy in any form.

This situation is unique. The State did not mark or offer as an exhibit a copy of the computer information in any tangible form. Thus, we are faced with a business records exception of "data compilation, in any form," based on testimony of business records observed on a computer screen. Hookstra's testimony as to what she observed on the computer screen was secondary evidence. Secondary evidence, as opposed to primary evidence, may be an authenticated copy or testimony of the witness to the substance of the contents of the original.

The admissibility of this type of evidence is determined under what is commonly referred to as the "best evidence rule." Edward J. Imwinkelried, Evidentiary Foundations ch. 7, § B at 111 (1980), says a more accurate title for the "best evidence

rule" would be the "original document rule." When a document's terms are in issue, the proponent has the burden to produce the original and present an admissible type of secondary evidence. *Id*.

In *Equitable Life v. Starr*, 241 Neb. 609, 615, 489 N.W.2d 857, 862 (1992), the Supreme Court stated that the best evidence rule might more properly be called the rule for " 'production of an original writing or document.' " The court noted that in other jurisdictions, in the absence of a satisfactory explanation for nonproduction of an original document, the original-document rule bars admission of secondary evidence to prove the contents of the document.

Although § 27-803(5) permits "data compilation, in any form," proper foundation for the use of secondary evidence is required by Neb. Rev. Stat. § 27-1004 (Reissue 1989). The original is not required, and other evidence of the contents is admissible if the originals are lost or destroyed and no original can be obtained, but no such evidence was offered here to establish why Hookstra should be allowed to testify as to what she observed on her computer screen. Therefore, the trial court should have sustained the foundational objection to Hookstra's testimony concerning the contents of the records she observed on the computer screen.

" 'In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt.' " *State v. Coleman*, 239 Neb. 800, 814, 478 N.W.2d 349, 358 (1992). Accord *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989). Harmless error exists when a review of the entire record shows that the erroneous admission of the evidence did not materially influence the jury or affect a substantial right of the defendant. *Coleman, supra*. Thus, erroneously admitted evidence is harmless when such evidence is cumulative and other properly admitted evidence supports the finding by the jury or other trier of fact. *Id.*; *Cox, supra*.

Although erroneously admitted, Hookstra's testimony was cumulative because other evidence, including irregularities in

the check itself, established Ward's guilt. The check came from outside DCS and contained a check number which was not normally completed until after the accounting department at DCS had issued a trust check. The notation on the check that it was for a Christmas gift was an unauthorized expenditure. The signature block was filled in by a DCS employee, whose signature was not genuine.

Shelton testified without objection that Ward said the check was a Christmas present from Ike Connelly. Shelton testified that Connelly was not an inmate. Shelton stated that the inmate number listed on the check had not been issued to an inmate since 1982. He testified that there was no Ike Connelly listed at LCC and no inmate number listed on the account.

As noted in Michael H. Graham, Handbook of Federal Evidence § 1001.0 at 1059 (3d ed. 1991):

> Appellate consideration of issues concerning application of the Original Writing Rule must be made in light of the purpose of the rule to secure the most reliable information as to the contents of a writing, recording, or photograph. Thus before any technical violation of the Original Writing Rule will be held reversible error, counsel must at least be in a position to assert that there is a good faith dispute as to the existence or content of the writing, recording or photograph. Absent such representation, any error is clearly harmless.

*Myrick v. United States*, 332 F.2d 279 (5th Cir. 1964), *cert. denied, Bergman et al. v. United States*, 377 U.S. 952, 84 S. Ct. 1630, 12 L. Ed. 2d 497.

Sufficient admissible evidence was presented to support the jury's verdict. We find the admission of Hookstra's testimony was harmless error. Ward's assignments of error are without merit, and the judgment of conviction is affirmed.

AFFIRMED.